SEAN DOYLE *v.* METROPOLITAN PROPERTY
AND CASUALTY INSURANCE COMPANY
(SC 15939)

Pursuant to Practice Book § 70-7 (b) the court has determined, sua sponte, that this case will be considered en banc.

November 3, 1999

MCDONALD, C. J., dissents from the order to consider the case en banc.

BERDON, J., dissenting. The majority has ordered this one issue case to be considered en banc by a seven

justice court approximately sixteen months after the record and all the briefs were filed and eleven months after oral argument. I object and dissent to the majority's sua sponte order that the case be considered en banc, that is, by a seven justice panel.

I normally would not write an opinion on this objection to the en banc order, but I do so in this case for three reasons. First, although it is debatable, it would appear that, before a case has been decided by this court, the chief justice has the sole authority to order that it be heard en banc. General Statutes § 51-207;[1] but see Practice Book § 70-7.[2] Nevertheless, I write to point this out publicly in order for the legislature to be fully

---

[1] General Statutes § 51-207 provides: "Parties entitled to be heard by a full court. (a) Each party in any case before the Supreme Court has a right to be heard by a full court. A full court shall consist of five associate judges or the Chief Justice and four associate judges or, *upon order of the Chief Justice*, six associate judges or the Chief Justice and five or six associate judges.

"(b) If any judge is absent and such right is claimed or if any judge is disqualified and the absence or disqualification is not waived or if the business before the court requires it, the Chief Justice or, in the case of his absence or disqualification, the senior judge present and qualified may summon the sixth or seventh member, or both, of the Supreme Court or one or more of the judges of the Superior Court to constitute a full court, who shall attend and act as judges of the Supreme Court for the time being.

"(c) Subject to the discharge of his duties as Chief Court Administrator, if he is also an associate judge of the Supreme Court, the Chief Court Administrator may be summoned to constitute a full court at the discretion of the Chief Justice, or, in case of his absence or disqualification, the senior judge present and qualified." (Emphasis added.)

[2] Practice Book § 70-7 provides: "Consideration En Banc

"(a) Before a case is assigned for oral argument, the chief justice or the chief judge may order, on the motion of a party or suo motu, that a case be heard en banc.

"(b) After argument but before decision, the entire court may order that the case be considered en banc. In that event either reargument en banc shall be ordered or the justices or judges who did not hear oral argument shall listen to the tapes of the oral argument before participating in the decision.

"(c) After decision, the entire court may order, on the motion of a party pursuant to Section 71-5 or suo motu, that reargument be heard en banc."

aware of the issue.[3] The legislature may wish to clarify who has the authority. It is an issue that is important not only to the parties but also to the chief justice who ultimately is responsible for the assignment of the associate justices to participate on panels.[4]

Second, I reach the mandatory retirement age of threescore plus ten on December 24, 1999; Conn. Const., art. V, § 6; at which time I must step down from this court. It is the view of a majority of my colleagues that I can vote only on a case that is not only argued, but also publicly released prior to my seventieth birthday.[5] Although General Statutes § 51-183g permits a judge of the Superior Court to "settle and dispose of all matters relating to . . . unfinished matters pertaining to causes theretofore tried by him, as if he were still [a] judge," there does not appear to be any analogous statutory authority to permit a Supreme Court justice to finish such business.

The legislature may wish to amend § 51-183g to include justices of the Supreme Court.[6] The legislature

[3] Could the rules of practice adopted by the judges trump the will of the people as expressed by the legislature? I suppose we could resurrect *State v. Clemente*, 166 Conn. 501, 516, 353 A.2d 723 (1974), wherein this court held that the trial court was not bound by a statute that infringed upon the judiciary's exclusive powers as set forth in the state constitution, but I thought *Clemente* was finally put to rest in *Bartholomew v. Schweizer*, 217 Conn. 671, 681–83, 587 A.2d 1014 (1991). See also *State v. Diaz*, 226 Conn. 514, 558, 628 A.2d 567 (1993) (*Berdon, J.*, with whom *Katz, J.*, joined, dissenting).

[4] General Statutes § 51-203 (a) provides in relevant part: "Assignment of cases for hearing by the Supreme Court shall be made by the chief clerk of the Supreme Court at the Supreme Court room in Hartford, under the direction of the Chief Justice or an associate judge designated by the Chief Justice . . . ."

[5] See General Statutes §§ 51-50j, 51-183g, 51-204 and 51-207.

[6] Nevertheless, I express no opinion with respect to the constitutionality of § 51-183g as it now provides or if it were to be amended to include justices of the Supreme Court. See Conn. Const., art. V, § 6, as amended by art. VIII, § 2, of the amendments ("[n]o judge shall be eligible to hold his office after he shall arrive at the age of seventy years, except that a chief justice or judge of the supreme court, a judge of the superior court, or a judge of the

should consider whether logic dictates that Supreme Court justices should be able to complete cases that they began prior to their seventieth birthday, unfettered by the logistical pressures of publishing the majority, concurrences and dissents of all justices who sat on those cases prior to that date.

Third, in the course of the conference proceedings on this case, the majority of the justices adopted an unwritten policy that should be made public and called to the attention of the legislature. They have decided that on all matters that come before the conference of the justices pertaining to general policy, all the associate justices and senior justices will each have a right to vote. The effect of this is to dilute the vote of an associate justice. For example, as a result of this policy, the voting power of an associate justice of the Supreme Court on such a decision is reduced to one out of nine instead of one out of seven because there are now two senior justices who vote. It is conceivable that the voting power of an associate justice could be reduced by 50 percent if there were, at any given time, seven senior justices. This obviously was not the intent of the legislature when it authorized a justice to elect to take senior status. In my view, senior justices should be limited to sitting as a justice on a case when there is a disqualification and there are not sufficient justices available to make up a full court. See General Statutes § 51-207 (a).

Accordingly, I dissent.

---

court of common pleas, who has attained the age of seventy years and has become a state referee may exercise, as shall be prescribed by law, the powers of the superior court or court of common pleas on matters referred to him as a state referee"); but see General Statutes §§ 51-50j, 51-183g, 51-204 and 51-207.

## Supplementary Opinions

McDonald, C. J., and Borden, Norcott, Katz, Palmer and Peters, Js.

Officially released March 6, 2000

PER CURIAM. It is extraordinary for there to be published an opinion dissenting from a sua sponte order of this court to consider a case en banc. See *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 912, 746 A.2d 1257 (1999) (*Berdon, J.*, dissenting from sua sponte order to consider case en banc). It is even more extraordinary for this response to that dissenting opinion to be published several weeks after the publication of that dissent. With extreme reluctance, we do so now, however, because the dissent was published without adequate time for this court to respond to it at the time of publication. We also do so because the dissent inaccurately calls into question certain actions of this court, and because, to the extent that internal matters regarding this court's proceedings now have been made public, the public record regarding those proceedings should be accurate.

The dissent makes three points. We respond to each in turn. The dissent's first point is that, "although it is debatable, it would appear that, before a case has been decided by this court, the chief justice has the sole authority to order that it be heard en banc. General Statutes § 51-207;[1] but see Practice Book [1999 Rev.]

---

[1] "General Statutes § 51-207 provides: 'Parties entitled to be heard by a full court. (a) Each party in any case before the Supreme Court has a right to be heard by a full court. A full court shall consist of five associate judges or the Chief Justice and four associate judges or, upon order of the Chief Justice, six associate judges or the Chief Justice and five or six associate judges.

" '(b) If any judge is absent and such right is claimed or if any judge is disqualified and the absence or disqualification is not waived or if the business before the court requires it, the Chief Justice or, in the case of his absence or disqualification, the senior judge present and qualified may summon the sixth or seventh member, or both, of the Supreme Court or one or more of the judges of the Superior Court to constitute a full court, who shall attend and act as judges of the Supreme Court for the time being.

§ 70-7."[2] *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 252 Conn. 913.

The dissent then invites the legislature "to clarify who has the authority." Id., 914. We take no position on whether the legislature should accept this invitation. Our sole purpose is to explain why, in our view, both the statute and the rule of appellate procedure have appropriate roles to play in the en banc decision-making process.

As the dissent points out, the statute provides that a full court consists of five justices "or, upon order of the Chief Justice, six associate judges or the Chief Justice and five or six associate judges." General Statutes § 51-207 (a). The rule of appellate procedure provides, however, that "[b]efore a case is assigned for oral argument, the chief justice . . . may order . . . that a case be heard en banc." Practice Book (1999 Rev.) § 70-7 (a). "After argument but before decision"; Practice Book (1999 Rev.) § 70-7 (b); and "[a]fter decision"; Practice Book (1999 Rev.) § 70-7 (c); however, the en banc decision is made by "the entire court . . . ." This rule,

---

" '(c) Subject to the discharge of his duties as Chief Court Administrator, if he is also an associate judge of the Supreme Court, the Chief Court Administrator may be summoned to constitute a full court at the discretion of the Chief Justice, or, in case of his absence or disqualification, the senior judge present and qualified.' " *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 252 Conn. 913 n.1 (*Berdon, J.*, dissenting).

[2] "Practice Book [1999 Rev.] § 70-7 provides: 'Consideration En Banc

" '(a) Before a case is assigned for oral argument, the chief justice or the chief judge may order, on the motion of a party or suo motu, that a case be heard en banc.

" '(b) After argument but before decision, the entire court may order that the case be considered en banc. In that event reargument en banc shall be ordered or the justices or judges who did not hear oral argument shall listen to the tapes of the oral argument before participating in the decision.

" '(c) After decision, the entire court may order, on the motion of a party pursuant to Section 71-5 or suo motu, that reargument be heard en banc.' " *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 252 Conn. 913 n.2 (*Berdon, J.*, dissenting).

adopted by the judges both of this court and the Appellate Court, has been in effect in one form or another since 1991. It also reflects the practice of this court prior to that date; see, e.g., *State* v. *Mooney*, 218 Conn. 85, 85 n.1, 588 A.2d 145 (1991); and heretofore has never been questioned.

The rule is based on this court's statutory authority to "institute rules of practice and procedure as to matters before it"; General Statutes § 51-199 (a);[3] and on this court's inherent authority to make rules governing its proceedings. The rule accomplishes a reasonable accommodation between the statutory and general administrative powers of the chief justice, on the one hand, and the court's statutory and inherent procedural authority, on the other hand. The chief justice's adminis-

[3] General Statutes § 51-199 provides: "Jurisdiction. (a) The Supreme Court shall have final and conclusive jurisdiction of all matters brought before it according to law, and may carry into execution all its judgments and decrees and institute rules of practice and procedure as to matters before it.

"(b) The following matters shall be taken directly to the Supreme Court: (1) Any matter brought pursuant to the original jurisdiction of the Supreme Court under section 2 of article sixteen of the amendments to the Constitution; (2) an appeal in any matter where the Superior Court declares invalid a state statute or a provision of the state Constitution; (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years; (4) review of a sentence of death pursuant to section 53a-46b; (5) any election or primary dispute brought to the Supreme Court pursuant to section 9-323 or section 9-325; (6) an appeal of any reprimand or censure of a probate judge, pursuant to section 45a-65; (7) any matter regarding judicial removal or suspension pursuant to section 51-51j; (8) an appeal of any decision of the Judicial Review Council pursuant to section 51-51r; (9) any matter brought to the Supreme Court pursuant to section 52-265a; (10) writs of error, pursuant to section 52-272; and (11) any other matter as provided by law.

"(c) The Supreme Court may transfer to itself a cause in the Appellate Court. Except for any matter brought pursuant to its original jurisdiction under section 2 of article sixteen of the amendments to the Constitution, the Supreme Court may transfer a cause or class of causes from itself, including any cause or class of causes pending on July 1, 1983, to the Appellate Court. The court to which a cause is transferred has jurisdiction."

trative authority to assign a case for en banc consideration operates fully prior to oral argument, when he or she is most familiar with the docket of cases to be heard by the court. The court's statutory and inherent procedural authority operates after a case has been heard or decided, when the reasons perceived by all of the members of the court regarding the en banc decision ought to be fully taken into account.

The dissent's second point is that "[i]t is the view of a majority of [his] colleagues that" a justice who has reached the constitutionally mandated retirement age of seventy may not participate in a case that is not "publicly released prior to [his] seventieth birthday." *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 252 Conn. 914. The notion that one who, by virtue of the constitution is no longer a member of this court, may not participate in its decisions, is not, however, simply the view of a majority of this court as currently constituted. It has been the uniformly held and followed view of this court long before the dissenting justice or any current member of this court was appointed to it, and that view has never been questioned before.

This court's records demonstrate that, consistent with the provision that, "[u]nless the court otherwise directs, its judgments . . . shall be deemed to have been rendered" on the date of publication in the Connecticut Law Journal; Practice Book § 71-1;[4] this court's decisions, in cases on which justices reaching the age of seventy have sat, uniformly have been published before the particular justice's seventieth birthday. In order to accomplish that result, the uniform practice

---

[4] Practice Book § 71-1 provides: "Judgments of the court may be embodied in judgment files, to be drawn upon request and signed by the appellate clerk. Unless the court otherwise directs, its judgments and orders shall be deemed to have been rendered or made on the date they appear in the Connecticut Law Journal, and the judgments or orders shall be entered as of that date."

has been not to assign justices approaching that age to cases argued less than three or four months before the justice's approaching seventieth birthday, and for the other members of the court to strive to issue the decision before that date.

This practice is not, as the dissent suggests, merely based on "logistical pressures . . . ." *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 252 Conn. 915. It is based, instead, on article fifth, § 6, of the constitution of Connecticut, as amended by article eight, § 2, of the amendments, which provides in pertinent part: "No judge shall be eligible to hold his office after he shall arrive at the age of seventy years . . . ."[5] Thus, this practice has long been in effect to avoid any possible constitutional question about the legitimacy of the judgments of this court.

The dissent also invites the legislature to amend General Statutes § 51-183g[6] "to include justices of the Supreme Court." *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 252 Conn. 914. Section 51-183g permits a Superior Court judge who has ceased to hold his office to "dispose of . . . any . . . unfinished matters pertaining to causes theretofore tried by him, as if he were still such judge." Furthermore, that statute has been held to be constitutional. See *Todd* v. *Bradley*,

---

[5] Article fifth, § 6, of the Connecticut constitution, as amended by article eight, § 2, of the amendments, provides: "No judge shall be eligible to hold his office after he shall arrive at the age of seventy years, except that a chief justice or judge of the supreme court, a judge of the superior court, or a judge of the court of common pleas, who has attained the age of seventy years and has become a state referee may exercise, as shall be prescribed by law, the powers of the superior court or court of common pleas on matters referred to him as a state referee."

[6] General Statutes § 51-183g provides: "Retiring judge; unfinished matters. Any judge of the Superior Court may, after ceasing to hold office as such judge, settle and dispose of all matters relating to appeal cases, as well as any other unfinished matters pertaining to causes theretofore tried by him, as if he were still such judge."

97 Conn. 563, 570, 117 A. 808 (1922); *Johnson* v. *Higgins*, 53 Conn. 236, 237–38, 1 A. 616 (1885). We express no view regarding whether the reasoning of those two cases would also render a similar statute applying to justices of this court constitutional. We note, however, that the principle of necessity that undergirds that statute has much less force when applied to this court.

As a matter of policy, we also note that, because of the uniform practice of this court, the question has not arisen whether a justice who has reached his seventieth birthday should be able nonetheless to participate in the court's decisions, and that, until the publication of the dissent in this case, no justice has felt at all hampered by that constitutional limit. Thus, it is not a problem that needs fixing. Furthermore, in recent years there have been several instances in which, because of various legitimate factors, decisions of this court have not been rendered until many months after their oral argument, sometimes not until the following court year. If such a statute were enacted, it conceivably could lead to the unseemly instance of a retired justice deciding a case *long* after he or she has ceased to be a member of this court.

The dissent's third point is that, *"in the course of the conference proceedings on this case,* the majority of the justices adopted an unwritten policy that . . . on all matters that come before the conference of the justices pertaining to general policy, all the associate justices and senior justices will each have a right to vote. The effect of this is to dilute the vote of an associate justice. . . . This obviously was not the intent of the legislature when it authorized a justice to elect to take senior status. In [the dissent's] view, senior justices should be limited to sitting as a justice on a case when there is a disqualification and there are not sufficient justices available to make up a full court. See General

Statutes § 51-207 (a)."[7] (Emphasis added.) *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 252 Conn. 915. Thus, the dissent's interpretation of General Statutes § 51-198[8] would mean that a senior justice could not sit on a case unless one of the justices engaged in full-time active service were disqualified, and could not participate and vote on general policy and administrative matters at all.

The dissent's assertion regarding the origin of this policy is inaccurate, and the dissent's legal analysis of it is incomplete. The assertion is inaccurate because the policy of this court to which the dissent refers was not adopted, as the dissent states, "in the course of the conference proceedings on this case . . . ." Id., 915. It was adopted in the fall of 1996, while the dissenting justice was, of course, a member of this court, and has been applied consistently since that time.

At that time, a question arose regarding the powers of a senior justice of this court because of differing views of certain members of the court regarding the meaning of § 51-198. Section 51-198 (a) provides in pertinent part: "The Supreme Court shall consist of one Chief Justice and six associate judges . . . ." Thus, a court of seven members.

Section 51-198 (b) provides: *"In addition thereto,* each chief justice or associate judge of the Supreme

---

[7] See footnote 1 of this opinion for the text of § 51-207.

[8] General Statutes § 51-198 provides: "Constitution of Supreme Court; retired judges, terms, participation in meetings. (a) The Supreme Court shall consist of one Chief Justice and six associate judges, who shall, at the time of their appointment, also be appointed judges of the Superior Court.

"(b) In addition thereto, each chief justice or associate judge of the Supreme Court who elects to retain his office but to retire from full-time active service shall continue to be a member of the Supreme Court during the remainder of his term of office and during the term of any reappointment under section 51-50i, until he attains the age of seventy years. He shall be entitled to participate in the meetings of the judges of the Supreme Court and to vote as a member thereof."

Court who elects to retain his office but to retire from full-time active service shall continue to be a member of the Supreme Court during the remainder of his term of office and during the term of any reappointment under section 51-50i, until he attains the age of seventy years. He shall be entitled to participate in the meetings of the judges of the Supreme Court and to vote as a member thereof." (Emphasis added.) Thus, subsection (b) of § 51-198, enacted in 1974, created the category of senior justice, to be differentiated from justices engaged in "full-time active service." Section 51-198 (b) also provided that such a senior justice shall, "in addition" to the seven members referred to in subsection (a), "continue to be a member of the Supreme Court . . . until he attains the age of seventy years . . . [and] shall be entitled to participate in the meetings of the judges of the Supreme Court and to vote as a member thereof."

In order to reconcile both subsection (a) and subsection (b) of § 51-198, and to avoid dilution of the votes of the full-time active members of this court regarding specific cases, the court, in 1996, adopted the following policy: with respect to general policy and administrative matters to come before this court, senior justices would have a full vote; with respect to specific cases, including petitions for certification to appeal pursuant to General Statutes § 51-197f,[9] and questions of reargument pursu-

[9] General Statutes § 51-197f provides: "Further review by certification only. Upon final determination of any appeal by the Appellate Court, there shall be no right to further review except the Supreme Court shall have the power to certify cases for its review upon petition by an aggrieved party or by the appellate panel which heard the matter and upon the vote of three justices of the Supreme Court so to certify and under such other rules as the justices of the Supreme Court shall establish. The procedure on appeal from the Appellate Court to the Supreme Court shall, except as otherwise provided, be in accordance with the procedure provided by rule or law for the appeal of judgments rendered by the Superior Court, unless modified by rule of the justices of the Supreme Court."

ant to Practice Book (1999 Rev.) § 70-7; see footnote 2 of this opinion; a senior justice would participate and vote only when specifically assigned to that case by the chief justice. This court consistently has applied this policy since 1996, and it has worked successfully.

The dissent's legal analysis is incomplete because it refers only to subsection (a) and ignores subsection (b) of § 51-198. It is subsection (b), which was enacted long after subsection (a), that forms the doctrinal underpinning of the policy of which the dissent complains. Indeed, the dissent's interpretation of § 51-198 would render much of subsection (b) meaningless, particularly the provisions that: (1) the constitution of the court would include senior justices "in addition" to the seven members specified in subsection (a); (2) a senior justice shall "continue to be a member of the Supreme Court"; and (3) a senior justice "shall be entitled to participate in the meetings of the judges of the Supreme Court and to vote as a member thereof." The only such "meetings" are the court's conferences, at which the justices vote on both individual cases and general policy and administrative matters.

In this opinion BORDEN, NORCOTT, KATZ, PALMER and PETERS, Js., concurred.

MCDONALD, C. J. dissenting. I was opposed to the en banc consideration of this case because it was ordered eleven months after argument and just a few weeks before Justice Berdon's seventieth birthday. Justice Berdon's disenfranchisement was avoided on the eve of his birthday by a matter of hours and I would have been content to dissent without an opinion were it not for the per curiam opinion. That opinion describes Justice Berdon's dissent as "inaccurate," at a time when, under the majority's reading of the law, Justice Berdon cannot respond.[1]

---

[1] The majority's use of the term "per curiam" is ironic. The United States Supreme Court has used that term to publish an opinion written or drafted

The majority observes that decisions of this court sometimes may be delayed, as in this case, for a year after argument, but suggests that justices approaching seventy should no longer participate in cases some "three or four" months before their birthdays because it would be unseemly to allow such an old person to conclude cases after seventy. Our constitution does not, however, mandate a constitutional age of disqualification at sixty-nine, sixty-nine and one-half or sixty-nine and three-fourths. See Conn. Const., art. V, § 6. The legislature should consider fixing the problem presented in this very case.

As to the vote of senior justices, Justice Berdon did a service by giving the bar and the public notice of the "policy." That "policy," really an unwritten rule adopted without legislative or public oversight, could stand some outside review.

I should conclude by stating that I find nothing inaccurate in Justice Berdon's last dissent. His record of thoughtful and sometimes provocative opinions is, to me, one consistent with Connecticut tradition begun in the very first opinion published in the Connecticut Reports, when Roger Sherman, who signed the Declaration of Independence, the Articles of Confederation and later the United States constitution in 1787, filed a dissent. *Whiting* v. *Jewel*, Kirby (Conn.) 1, 2 (1786) (*Sherman, J.*, dissenting).

by a justice who left the court precipitately before publication. See S. Wasby, S. Peterson, J. Schubert & G. Schubert, "The Per Curiam Opinion: Its Nature and Function," 76 Judicature 29, 30 (1992) (referring to publication of Justice Fortas' opinion in *Brandenburg* v. *Ohio*, 395 U.S. 444, 89 S. Ct. 1827, 23 L. Ed. 2d 430 [1969], after his resignation from court).