MARTIN HAMMOND *v.* COMMISSIONER
OF CORRECTION
(SC 16220)

McDonald, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.*

* The listing of justices reflects their seniority status on this court as of the date of argument.

Although Chief Justice McDonald reached the mandatory age of retirement before the date that this opinion officially was released, his continued participation on this panel is authorized by General Statutes § 51-198 (c).

Argued December 6, 2000—officially released March 26, 2002

*Temmy Ann Pieszak*, chief of habeas corpus services, office of the chief public defender, for the appellant (petitioner).

*Madeline A. Melchionne*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Steven R. Strom*, assistant attorney general, for the appellee (respondent).

*Opinion*

PALMER, J. The principal issue presented by this certified appeal is whether the petitioner, Martin Hammond, who is serving a twenty-five year prison term for murder and kidnapping,[1] is entitled to credit toward

---

[1] The petitioner was convicted of the crimes of murder in violation of General Statutes § 53a-54a (a), and kidnapping in the second degree in violation of General Statutes § 53a-94 (a). He received a total effective sentence of forty-five years imprisonment, execution suspended after twenty-five years, and five years probation.

his sentence pursuant to General Statutes § 18-98d[2] for the four months that he was incarcerated in Massachusetts while contesting extradition to this state on those charges after his arrest in Massachusetts pursuant to a fugitive warrant. The habeas court rejected the petitioner's claim under § 18-98d, and the Appellate Court affirmed the judgment of the habeas court. *Hammond* v. *Commissioner of Correction,* 54 Conn. App. 11, 18, 734 A.2d 571 (1999). We conclude that the petitioner is not entitled to the presentence credit that he seeks and, consequently, we affirm the judgment of the Appellate Court.

---

[2] General Statutes § 18-98d provides: "(a) Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of his sentence equal to the number of days which he spent in such facility from the time he was placed in presentence confinement to the time he began serving the term of imprisonment imposed; provided (1) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (2) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for his presentence confinement, except that if a person is serving a term of imprisonment at the same time he is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section. In the case of a fine each day spent in such confinement prior to sentencing shall be credited against the sentence at the rate of ten dollars.

"(b) In addition to any reduction allowed under subsection (a), if such person obeys the rules of the facility he may receive a good conduct reduction of any portion of a fine not remitted or sentence not suspended at the rate of ten days or one hundred dollars, as the case may be, for each thirty days of presentence confinement; provided any day spent in presentence confinement by a person who has more than one information pending against him may not be counted more than once in computing a good conduct reduction under this subsection.

"(c) The Commissioner of Correction shall be responsible for ensuring that each person to whom the provisions of this section apply receives the correct reduction in such person's sentence; provided in no event shall credit be allowed under subsection (a) in excess of the sentence actually imposed."

The following relevant facts are undisputed. On August 25, 1985, the petitioner was arrested in Boston, Massachusetts, pursuant to a fugitive warrant issued by the state of Connecticut in connection with crimes that he allegedly had committed earlier that month. After initially contesting this state's efforts to extradite him, the petitioner waived extradition on January 2, 1986. At that time, he was transported to Connecticut, where he was held at the Bristol police department from January 6, 1986, until his arraignment on January 8, 1986. On January 8, 1986, the petitioner was placed in the custody of the respondent, the commissioner of correction (commissioner).[3] Thereafter, the petitioner was convicted of the crimes of murder and kidnapping in the second degree[4] and was sentenced on June 9, 1986. The petitioner has remained in the custody of the commissioner since his arraignment on January 8, 1986.

The commissioner awarded the petitioner 152 days of presentence confinement credit under § 18-98d (a) for the period from January 8, 1986, to June 9, 1986, during which he was confined in a department of correction facility prior to sentencing. The commissioner also awarded the petitioner fifty days of presentence good time credit under § 18-98d (b) on the basis of his good conduct during the 152 days of presentence confine-

---

[3] The petitioner claims that he was in transit from Massachusetts to Connecticut from January 2, 1986, until January 6, 1986, during which time he was in the custody of Lieutenant Bruce M. LeBeau of the Connecticut state police. The petitioner further claims that he was incarcerated at the Bristol police department from January 6, 1986, until January 8, 1986, when he was transferred to the custody of the commissioner. In support of these factual assertions, the petitioner relies on a transfer report that was admitted into evidence during the habeas proceeding. Upon review of that report, however, we agree with the commissioner that it does not disclose the precise dates on which the petitioner was in LeBeau's custody or on which he was confined at the Bristol police department. Nevertheless, because those dates are not material to our resolution of the petitioner's claims, we assume, for purposes of this appeal, that the dates asserted by the petitioner are accurate.

[4] See footnote 1 of this opinion.

ment. The petitioner, however, did not receive credit for the period from August 25, 1985, to January 2, 1986, during which he was incarcerated in Massachusetts prior to his extradition to this state. The petitioner also did not receive credit for the period from January 2, 1986, to January 6, 1986, during which he was in transit from Massachusetts to this state, or for the period from January 6, 1986, to January 8, 1986, during which he was confined at the Bristol police department.

In 1996, the petitioner commenced this habeas corpus action, claiming that he is entitled to presentence confinement and presentence good time credit under § 18-98d for the period from August 25, 1985, to January 8, 1986. The habeas court rejected the petitioner's claim and dismissed his petition, relying on *Johnson* v. *Manson*, 196 Conn. 309, 312, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986), and *Taylor* v. *Robinson*, 196 Conn. 572, 575, 494 A.2d 1195 (1985), appeal dismissed, 475 U.S. 1002, 106 S. Ct. 1172, 89 L. Ed. 2d 291 (1986), in which this court concluded that the habeas petitioners in those cases were not entitled to presentence confinement credit for time spent incarcerated in another state pending extradition to this state. The petitioners in *Johnson* and *Taylor* based their claims for presentence credit on General Statutes § 18-98,[5] which, though linguistically similar to § 18-98d; cf. footnote 2 of this opinion;

---

[5] General Statutes § 18-98 provides: "Any person who has been denied bail or who has been unable to obtain bail and who is subsequently imprisoned for an offense committed prior to July 1, 1981, is entitled to commutation of his sentence by the number of days which he spent in a community correctional center from the time he was denied or was unable to obtain bail to the time he was so imprisoned. The Commissioner of Correction shall, if such person has conformed to the rules of the institution, credit such person with the number of days to which the supervising officer of the correctional center where such person was confined while awaiting trial certifies such person was confined between the denial of bail to him or his inability to obtain bail and his imprisonment."

addresses presentence credit for prisoners arrested for offenses committed *prior* to July 1, 1981. See *Taylor* v. *Robinson*, supra, 573; *Johnson* v. *Manson*, supra, 310.

On appeal, the Appellate Court affirmed the judgment of the habeas court. *Hammond* v. *Commissioner of Correction*, supra, 54 Conn. App. 18. With respect to the petitioner's claim that he was entitled to presentence credit for the time that he had been incarcerated in Massachusetts while contesting extradition to this state, the Appellate Court agreed with the habeas court that that claim was foreclosed by this court's reasoning in *Johnson* and *Taylor*. Id., 16. With respect to the petitioner's claim that he was entitled to presentence credit for the period from January 2, 1986, to January 8, 1986, the Appellate Court declined to consider that claim on the ground that it had not been briefed adequately. Id., 16 n.5.

We granted the petitioner's petition for certification limited to two issues, namely: (1) whether the Appellate Court properly concluded that the petitioner is not entitled to presentence confinement and presentence good time credit under § 18-98d for the time that he was incarcerated in Massachusetts while contesting this state's efforts to extradite him; and (2) whether the Appellate Court properly rejected the petitioner's claim that he is entitled to such credit for the period from January 2, 1986, to January 8, 1986, on the ground that the claim had been briefed inadequately. See *Hammond* v. *Commissioner of Correction*, 251 Conn. 919, 920, 742 A.2d 358 (1999). We agree with the Appellate Court's conclusion that the petitioner is not entitled to credit pursuant to § 18-98d for the time that he was incarcerated in Massachusetts. Although we disagree with the Appellate Court's conclusion that the petitioner failed to brief adequately his claim that he is entitled to credit for the period from January 2, 1986, to January 8, 1986,

we reject that claim on its merits. Accordingly, we affirm the judgment of the Appellate Court.

I

The petitioner first claims that the Appellate Court improperly determined that he is not entitled to credit pursuant to § 18-98d for the time that he was incarcerated in Massachusetts. The petitioner advances two arguments in support of his claim. First, he argues that such credit is expressly authorized under the language of § 18-98d. Second, he argues that any possible ambiguity in the statutory language must be resolved in the petitioner's favor because the contrary construction adopted by the Appellate Court renders § 18-98d unconstitutional under the due process and equal protection clauses of the fourteenth amendment to the United States constitution.[6] We are not persuaded by the petitioner's arguments.

Whether § 18-98d authorizes presentence confinement and presentence good time credit for time that a pretrial detainee remains in custody in a sister state while contesting extradition to this state is an issue of statutory construction. "Statutory interpretation is a matter of law over which this court's review is plenary. . . . In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legisla-

---

[6] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. . . ."

The petitioner also claims a violation of equal protection under article first, § 20, of the Connecticut constitution. He has failed to explain, however, why he is entitled to any greater protection under the equal protection provisions of the state constitution than he is under the analogous provisions of the federal constitution. For purposes of this appeal, therefore, we treat those provisions as embodying the same level of protection. E.g., *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 314 n.8, 673 A.2d 474 (1996).

tive history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 79, 84, 743 A.2d 156 (1999). With these principles in mind, we turn to the petitioner's claim that he is entitled to presentence credit for the period of time during which he was incarcerated in Massachusetts prior to his extradition to this state.

The petitioner contends, first, that § 18-98d, by its terms, authorizes presentence credit for the period of time during which a pretrial detainee is incarcerated in an out-of-state facility while challenging this state's efforts to extradite him. Because the language of § 18-98d is similar to the language of § 18-98; see footnotes 2 and 5 of this opinion; our interpretation of § 18-98 in *Johnson* v. *Manson*, supra, 196 Conn. 309, and *Taylor* v. *Robinson*, supra, 196 Conn. 572, informs our construction of § 18-98d. We therefore begin our analysis of the petitioner's claim with a review of those two cases.

In *Johnson*, we held that, under § 18-98, presentence credit is available only to pretrial detainees who are incarcerated in a facility administered by the commissioner; *Johnson* v. *Manson*, supra, 196 Conn. 312, 317–19; or who otherwise are subject to the control of the commissioner. See id., 317–18 and n.9. In rejecting the claim of the petitioner, Samuel Lewis Johnson, that he was entitled to presentence credit for the time that he was incarcerated in a Florida facility while contesting extradition to this state on the charge of escape from custody, we concluded that Johnson's claim was foreclosed by "the plain, straightforward language of § 18-98 . . . ." Id., 317. We noted, in particular, "that § 18-98 as written has no language about 'while awaiting extradition,' but rather clearly specifies 'while awaiting

trial.' " Id., 315. We explained that it was "obvious that the 'awaiting trial' criterion is critical in determining credits for those so entitled." Id. We also focused on the requirement of § 18-98 that the pretrial detainee seeking presentence credit be confined in a community correctional center. See id., 317–18. We reasoned that "[a] 'community correctional center' is a 'correctional institution'; General Statutes [Rev. to 1985] § 1-1 (w);[7] and encompasses institutions situated in Connecticut rather than those outside Connecticut in which one awaiting extradition is confined. . . . [U]nder such a view Connecticut authorities have complete control over inmates confined in Connecticut, including those confined outside Connecticut pursuant to § 18-102,[8] in

[7] General Statutes (Rev. to 1985) § 1-1 (w) defines the term "correctional institutions" for purposes of the General Statutes and includes within its definition "community correctional centers . . . ." The 1985 revision of § 1-1 (w) provides: " 'Correctional institutions' means the Connecticut Correctional Institution, Somers; the Connecticut Correctional Institution, Enfield; the Connecticut Correctional Institution, Niantic; the Connecticut Correctional Institution, Cheshire; the Community Correctional Centers, Bridgeport; Brooklyn; Haddam; Hartford; Litchfield; New Haven; and Montville and the Connecticut Correctional Camp, Portland. Wherever in the general statutes, the words 'State Prison,' appear, they shall be construed to mean the Connecticut Correctional Institution, Somers; 'State Prison for Women' shall be construed to mean the maximum security division of the Connecticut Correctional Institution, Niantic; 'jails' or 'jail' shall be construed to mean the Community Correctional Centers, Bridgeport; Brooklyn; Haddam; Hartford; Litchfield; New Haven; and Montville and those portions of the Connecticut Correctional Institution, Niantic, used to detain female persons awaiting disposition of pending charges or to confine female persons convicted of, or who plead guilty to, the commission of misdemeanors and who have been sentenced to community correctional centers or any of them, as the case may be; 'Connecticut Reformatory' shall be construed to mean the Connecticut Correctional Institution, Cheshire, 'The Connecticut State Farm for Women' shall be construed to mean the Connecticut Correctional Institution, Niantic."

[8] Under the New England Interstate Corrections Compact (Compact), to which Connecticut is a party; see General Statutes §§ 18-102 through 18-104; the commissioner may direct that an inmate convicted in Connecticut be confined in a correctional facility within the territory of any other state that is a party to the Compact. See General Statutes § 18-102 (article IV [a] of Compact). Any inmate transferred outside Connecticut "shall at all times

contrast to the lack of control over an inmate wanted in Connecticut who is confined elsewhere awaiting extradition." *Johnson* v. *Manson,* supra, 317–18.

We also rejected Johnson's claim that a literal interpretation of § 18-98 would render it unconstitutional under the equal protection and due process clauses of the federal constitution.[9] With respect to his equal protection claim, Johnson maintained that the denial of presentence credit for the time that he had been incarcerated in Florida while contesting extradition to this state "effectively lengthen[ed]" the sentence that he would have been required to serve relative to a similarly situated detainee who had committed the same crime and had received the same sentence but who had been arrested and incarcerated in this state pending disposition of his case. Id., 319. We concluded that, because Johnson had been incarcerated outside this state's borders, his claim simply did not implicate constitutional principles of equal protection. See id., 320–21. We explained: "A state's equal protection constitutional obligation [m]anifestly . . . can be performed only where its laws operate, that is, *within its own jurisdiction.* It is there that the equality of legal right must be maintained. That obligation is imposed

be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state . . . ." General Statutes § 18-102 (article IV [c] of Compact). "The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state." General Statutes § 18-102 (article IV [e] of Compact).

[9] We note that Johnson, like the petitioner in the present case; see footnote 6 of this opinion; also claimed an equal protection violation under article first, § 20, of the Connecticut constitution. *Johnson* v. *Manson,* supra, 196 Conn. 319. In *Johnson,* however, we treated the analogous federal and state equal protection provisions as according the same level of protection, presumably because Johnson had not articulated any reason why, under the circumstances, he was entitled to any greater rights under the state constitution. See id., 320–21; cf. *Lash* v. *Aetna Casualty & Surety Co.,* 236 Conn. 318, 330 n.16, 673 A.2d 84 (1996).

by the Constitution upon the States severally as governmental entities . . . each responsible for its own laws establishing the rights and duties of persons *within its borders*." (Emphasis in original; internal quotation marks omitted.) Id., 320, quoting *Missouri ex rel. Gaines* v. *Canada*, 305 U.S. 337, 350, 59 S. Ct. 232, 83 L. Ed. 208 (1938).

We further stated that, "even if [Johnson] could overcome this equal protection obstacle, the rational basis standard, and not the compelling state interest standard, would be applicable. We perceive no fundamental right requiring that this nonindigent petitioner be credited with his Florida confinement time while awaiting extradition. . . . There is no invidious classification involved. The credit sought by the petitioner under § 18-98, statutorily created, is a matter of legislative grace. . . . While not requiring identical treatment, equal protection does require that a distinction made must have some relevance to the purpose for which the classification is made. . . . [Section] 18-98 satisfies such a test. The classification it makes is between those persons who are confined within the control of the Connecticut correctional system and those who are not. As to the former, the appropriate Connecticut authorities have control over where they are, their availability for such matters as trials, hearings, release, and the like, and from their control emerges their responsibility for them. As to the latter [category of persons], Connecticut has no such control. This legislative classification has a fair and substantial relation to the object of § 18-98; it entitles those who do come within its ambit to receive credit for their Connecticut-controlled confinement 'while awaiting trial.' . . . This certainly rationally advances the legitimate state interest of authorizing credit to those so held when the . . . commissioner has determined that a person so confined has 'conformed to the rules of the institution' in which [that

person] is confined." (Citations omitted.) *Johnson* v. *Manson*, supra, 196 Conn. 321–23 n.12.

Johnson also asserted that construing § 18-98 to deny him presentence credit would violate his due process rights, "first, [because] such a denial operates as an unconstitutional chill to the assertion of his fundamental right to contest extradition by habeas corpus and, second, [because] it unconstitutionally punishes him for doing so by effectively lengthening the subsequent sentence imposed upon him for the crime for which he was being extradited." Id., 322. Although we acknowledged that, as a general matter, principles of due process prohibit the state from penalizing a person for exercising his or her constitutional rights; see, e.g., *United States* v. *Goodwin*, 457 U.S. 368, 372, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982); *Bordenkircher* v. *Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978); we noted that "it is also clear that the . . . constitution does not forbid every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights." (Internal quotation marks omitted.) *Johnson* v. *Manson*, supra, 196 Conn. 327, quoting *Chaffin* v. *Stynchcombe*, 412 U.S. 17, 30, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973). After emphasizing that the commissioner did not deny Johnson presentence credit for any improper reason but, rather, because "the requested credit [could not] be given [under] . . . the plain statutory command of § 18-98"; *Johnson* v. *Manson*, supra, 325; we rejected Johnson's due process claim in light of "the narrowness of the permissible inquiry in the habeas corpus hearing in Florida; see *Michigan* v. *Doran*, 439 U.S. 282, 289, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978); *Parks* v. *Bourbeau*, 193 Conn. 270, 275, 477 A.2d 636 (1984); the plain command of § 18-98 that no credit can be given to one in [Johnson's] circumstances, and the absence of any legitimate basis suggesting any interdicted vindic-

tiveness, punishment or the like for the choice exercised . . . ." *Johnson* v. *Manson*, supra, 327.

Justice Shea, joined by Judge Satter,[10] dissented from the majority opinion in *Johnson*. Justice Shea acknowledged that "[t]he interpretation of § 18-98 adopted by the [majority was] undeniably consistent with the language of the statute that authorizes commutation of a defendant's sentence 'by the number of days *which he spent in a community correctional center*' and that requires a certification of such commutation by 'the supervising officer of *the correctional center where such person was confined* while awaiting trial . . . .' " (Emphasis in original.) Id., 329 (*Shea, J.*, dissenting). Justice Shea noted, however, that the majority had "sanction[ed] several . . . departures from the literal requirements of [§ 18-98]." Id., 329–30 (*Shea, J.*, dissenting). For example, Justice Shea noted that the majority had acknowledged that pretrial detainees who had been transferred to penal institutions outside Connecticut pursuant to the New England Interstate Corrections Compact; General Statutes §§ 18-102 through 18-104;[11] were entitled to presentence credit even though those detainees were not awaiting trial in a "community correctional center," a prerequisite to receiving presentence credit based on a literal interpretation of § 18-98.[12] *Johnson* v. *Manson*, supra, 196 Conn. 330 (*Shea*,

---

[10] Judge Satter, then a judge of the Superior Court, was designated to sit on the case by Chief Justice Peters pursuant to General Statutes (Rev. to 1985) § 51-207 (b).

[11] See footnote 8 of this opinion.

[12] Justice Shea identified several other circumstances in which pretrial detainees who could not satisfy the strict language of § 18-98 nevertheless were entitled to credit thereunder: "Prisoners who are transferred by the commissioner pursuant to [General Statutes] § 18-86 from a community correctional center or other correctional facility while [a]waiting trial to any other institution or facility of the department of correction continue to earn a commutation of their sentences under § 18-98. . . . Defendants who are transferred to mental institutions for the purpose of competency examinations pursuant to General Statutes [Rev. to 1985] § 54-56d are also entitled to this credit. Even those who, like [Johnson], are extradited from another

*J.,* dissenting). Justice Shea asserted that the majority had approved such "deviations from the strict language of the statute . . . in order to accommodate long-standing practices of the commissioner which forestall equal protection claims that would otherwise be raised by prisoners denied the credit for time served prior to sentence, not in a community correctional center, as § 18-98 appears to dictate, but elsewhere." Id., 330–31 (*Shea, J.,* dissenting).

Furthermore, in Justice Shea's view, under the majority's interpretation of § 18-98, the "difference in treatment accorded to those who contest extradition as compared to other prisoners who are incarcerated prior to sentence is a denial of equal protection of the laws that is prohibited by [the fourteenth amendment to the] federal constitution . . . ."[13] (Internal quotation marks omitted.) Id., 328 (*Shea, J.,* dissenting). According to Justice Shea, "[t]he discrimination sanctioned by the majority [could not] be justified on any rational basis and thus fail[ed] a criterion essential to the validity of any classification. . . . It also impinge[d] upon the free exercise of the fundamental constitutional right to challenge the legality of a person's confinement by [seeking

state are given this allowance for the time spent in confinement while awaiting transportation to this state after extradition has been ordered by the asylum state." *Johnson* v. *Manson,* supra, 196 Conn. 330 (*Shea, J.,* dissenting).

[13] Justice Shea disagreed with the majority's conclusion that Johnson's claim did not implicate constitutional principles of equal protection because Johnson was seeking presentence credit in connection with his incarceration outside the borders of this state. See generally *Johnson* v. *Manson,* supra, 196 Conn. 332–34 (*Shea, J.,* dissenting). Justice Shea reasoned that, "[a]lthough it may be true that a state's equal protection obligations 'can be performed only where its laws operate, that is, within its own jurisdiction'; *Missouri ex rel. Gaines* v. *Canada,* [supra, 305 U.S. 350]; the denial of equal protection in [*Johnson*] occurred while [Johnson] was in this state at the time of sentencing when the time he served in Florida was not credited." *Johnson* v. *Manson,* supra, 332 (*Shea, J.,* dissenting).

a writ of] habeas corpus . . . .[14] [This impact] upon [a] basic constitutional [right] can be justified only by [demonstrating] that the classification approved by the majority . . . is necessary to meet a compelling state interest, the most difficult hurdle to surmount in the face of an equal protection challenge. . . . No contention has been made, either by the state or the majority, that this exalted criterion for constitutional validity, if applicable, has been satisfied by the record . . . ." (Citations omitted.) Id., 328–29 (*Shea, J.*, dissenting).

In *Taylor* v. *Robinson*, supra, 196 Conn. 572, this court, in a plurality opinion, rejected a claim identical to the one that we had considered just two months

---

[14] In support of his contention that § 18-98 should be interpreted to authorize presentence credit for persons incarcerated in another state while contesting extradition to this state, Justice Shea observed that the construction of § 18-98 advanced by the majority "operate[d] principally upon a suspect class composed of those prisoners too indigent to provide bail during the pendency of the extradition proceeding." *Johnson* v. *Manson*, supra, 196 Conn. 329 (*Shea, J.*, dissenting). As Justice Shea acknowledged, however, Johnson was not a member of that purported class because his incarceration during the extradition proceedings resulted from a denial of bail and not from his inability to post bail. Id., 337 (*Shea, J.*, dissenting). There also was nothing in the record of *Johnson* to establish that Johnson was indigent. Id., 319 n.10. In view of the fact that Johnson had remained in jail in Florida because he was denied bail and not because he was indigent, the majority in *Johnson* did not have occasion to address the issue of whether its interpretation of § 18-98 might render it unconstitutional as applied to an indigent petitioner who is unable to post bail in the asylum state.

Although the petitioner in the present case urges us to adopt the reasoning of Justice Shea's dissent, the petitioner has not established that he was indigent when he was arrested and incarcerated in Massachusetts. Furthermore, neither the record of the present case nor the record of the petitioner's underlying criminal case contains any indication as to whether bail was set or denied in Massachusetts. *McCarthy* v. *Commissioner of Correction*, 217 Conn. 568, 580 n.15, 587 A.2d 116 (1991) (this court may take judicial notice of files of Superior Court in same or other cases). Because the petitioner has not demonstrated that his failure to obtain release while contesting extradition was the result of indigency, we, like the majority in *Johnson*, do not address the constitutionality of denying statutory presentence credit to a prisoner whose indigency makes it impossible for him or her to post bail in the asylum state while challenging extradition.

earlier in *Johnson*, concluding that "[o]ur . . . decision in *Johnson* . . . require[d] this result." Id., 575. Justice Shea dissented for the reasons that he set forth in his dissenting opinion in *Johnson*. Id., 579 (*Shea, J.*, dissenting); see *Johnson* v. *Manson*, supra, 196 Conn. 328–41 (*Shea, J.*, dissenting). Chief Justice Peters, joined by Justice Santaniello, issued a concurring opinion in which she expressed her agreement with Justice Shea that the interpretation of § 18-98 adopted by the majority in *Johnson* rendered that provision constitutionally infirm. *Taylor* v. *Robinson*, supra, 577 (*Peters, C. J.*, concurring). Although persuaded by Justice Shea's dissent in *Johnson*, Chief Justice Peters nevertheless concluded that she was bound to follow the construction of § 18-98 adopted by the court in *Johnson* because, she explained, "[a] change in the constituency of this court is not a sufficiently compelling reason to warrant departure from a recently established construction of a state statute." Id., 578 (*Peters, C. J.*, concurring). Justice Peters stated that, "[b]ecause the [majority's] holding in *Johnson* . . . rest[ed] squarely on construction of the language of § 18-98, it [was then] up to the legislature to decide whether this court [was] correct in its view of the credit properly to be afforded pretrial detainees held in other jurisdictions." Id. (*Peters, C. J.*, concurring). Justice Peters then "urge[d] the legislature . . . to reexamine in their entirety the principles that should govern credits for pretrial incarceration." Id. (*Peters, C. J.*, concurring).

The petitioner claims that this court's construction of § 18-98 in *Johnson* and *Taylor* does not govern our interpretation of § 18-98d. Specifically, the petitioner contends that: (1) linguistic differences between § 18-98d and § 18-98 support his claim that he is entitled to presentence credit under § 18-98d for the period of his incarceration in Massachusetts while contesting extradition to this state; (2) in any event, our construction

of § 18-98 in *Johnson* and *Taylor* was incorrect; and (3) notwithstanding this court's contrary conclusion in *Johnson* and *Taylor*, it is constitutionally impermissible to deny statutory presentence confinement credit for the time that a person is incarcerated in another state while contesting extradition to this state. We reject the petitioner's contentions, which we address in turn.

The petitioner's linguistic argument is predicated on the fact that § 18-98d, in contrast to § 18-98, contains no express requirement that the pretrial detainee be incarcerated "while awaiting trial."[15] The petitioner maintains that this distinction between §§ 18-98 and 18-98d is crucial to our interpretation of § 18-98d because, in *Johnson* v. *Manson*, supra, 196 Conn. 315–16, we had relied on the "while awaiting trial" language in concluding that § 18-98 did not authorize credit for the period of time during which Johnson was incarcerated in Florida while contesting *extradition* to this state.

We agree with the petitioner that the absence of the phrase "while awaiting trial" from § 18-98d provides some support for his contention that § 18-98d is distinguishable from § 18-98. As we expressly noted in *Johnson*, however, "in 1980 the General Assembly enacted . . . § 18-98d . . . . Despite the opportunity to do so,

---

[15] The petitioner also notes that § 18-98d, unlike § 18-98, contains no language requiring the supervising officer of the correctional center at which the detainee is confined to certify the number of days of the detainee's confinement. The petitioner, however, has failed to articulate any reason, and we are aware of none, why the absence of that language bears upon the issue of statutory interpretation raised by the petitioner's claim.

The petitioner further notes that, under § 18-98, which authorizes day-for-day credit for presentence confinement but not good time credit for such confinement, a detainee may not receive presentence credit unless he "has conformed to the rules of the institution [at which he is detained]"; General Statutes § 18-98; whereas, under § 18-98d, only presentence good time credit is conditioned upon a detainee's adherence to the rules of the institution. See General Statutes § 18-98d (b). Again, however, the petitioner has not explained why this distinction supports his claim, and we do not see how it does so.

the legislature did not at that time include any language that suggested [that § 18-98d] was to be applied to a person confined outside Connecticut who was contesting extradition to this state." Id., 325 n.14.

More importantly, certain language in § 18-98d severely undermines the petitioner's contention that he is entitled to the presentence credit that he seeks. In particular, General Statutes § 18-98d (a) authorizes presentence credit for those persons "confined to a *community correctional center or a correctional institution* . . . ." (Emphasis added.) The Massachusetts facility at which the petitioner was incarcerated pending his extradition to this state is neither a "community correctional center" nor a "correctional institution" as those terms are defined under General Statutes § 1-1 (w).[16] See footnote 7 of this opinion. Thus, the petitioner has failed to satisfy a prerequisite to the entitlement of presentence confinement credit under § 18-98d (a).[17]

The petitioner's attempt to distinguish §§ 18-98 and 18-98d is further undermined by the dictates of General Statutes § 18-98d (b), which authorizes an award of presentence good time credit at a rate of ten days per thirty days of presentence confinement "if [the pretrial detainee] obeys the rules of the facility . . . ." Under

---

[16] Moreover, the petitioner was not otherwise under the control of the commissioner while he was incarcerated in Massachusetts. See *Johnson* v. *Manson*, supra, 196 Conn. 317–18 and n.9.

[17] We note that the commissioner has statutory authority to transfer inmates to out-of-state facilities. E.g., General Statutes §§ 18-87, 18-102 and 18-106. As the court in *Johnson* suggested, any pretrial detainee who has been transferred to an out-of-state facility is entitled to presentence credit for the time that he or she was confined in that facility pending trial. See *Johnson* v. *Manson*, supra, 196 Conn. 317–18 and n.9 (transfer under § 18-102). The court in *Johnson* reasoned that the commissioner's use of this statutory authority did not undermine the court's reliance on the plain language of § 18-98 in ascertaining the meaning of that statutory section. See id. We agree with this reasoning, which is equally applicable to our construction of § 18-98d.

the petitioner's construction of § 18-98d, he would be entitled to such good time credit for the time that he was incarcerated in Massachusetts. It is unlikely, however, that the legislature intended to make such credit available to a person who, like the petitioner, is incarcerated in another state and over whom the commissioner has no control.[18] For these reasons, we are not persuaded that the linguistic differences between §§ 18-98 and 18-98d warrant a conclusion that a pretrial detainee who is incarcerated in another state while contesting extradition to this state is entitled to credit under the latter provision notwithstanding our contrary conclusion with respect to the entitlement to credit under the former provision.

The petitioner also claims that our construction of § 18-98 in *Johnson* and *Taylor* should not guide our interpretation of § 18-98d because those two cases were wrongly decided. In essence, the petitioner claims that our holdings in *Johnson* and *Taylor* reflect a fundamental misperception of the intent of the legislature regarding the availability of presentence credit to a person who, like the petitioner, was arrested in another state pursuant to a warrant issued by this state and was incarcerated in that foreign state while contesting extradition to this state. Whatever merit we might find in the petitioner's construction of § 18-98 were we writing

---

[18] Of course, pretrial detainees who have been transferred by the commissioner to an out-of-state facility do receive presentence credit for the time that they are incarcerated outside this state under the commissioner's transfer authority. Before deciding to exercise his authority to transfer a pretrial detainee to a particular out-of-state institution, however, the commissioner has the opportunity to gather information concerning, inter alia, the rules and regulations of the out-of-state institution, the enforcement of those rules and regulations, and the extent to which the institution is prepared to apprise the commissioner of the detainee's compliance with institutional rules and regulations. No similar opportunity is available to the commissioner when, as in the present case, the pretrial detainee is incarcerated in an out-of-state facility simply because he was arrested in another state on a fugitive warrant issued by this state.

on a clean slate, we are constrained to reject his argument because *Johnson* and *Taylor* were decided over sixteen years ago, and the legislature has failed to take any steps to amend either § 18-98 or § 18-98d in response to the clear holdings of those two cases. "While we are aware that legislative inaction is not necessarily legislative affirmation . . . we also presume that the legislature is aware of [this court's] interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation. . . . Time and again, we have characterized the failure of the legislature to take corrective action as manifesting the legislature's acquiescence in our construction of a statute. . . . Once an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision." (Citations omitted; internal quotation marks omitted.) *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 252, 756 A.2d 1264 (2000). Indeed, the inference of legislative acquiescence in *Johnson* and *Taylor* is especially strong in light of the fact that Chief Justice Peters, in her concurring opinion in *Taylor*, expressly urged the legislature "to reexamine in their entirety the principles that should govern credits for pretrial incarceration"; *Taylor* v. *Robinson*, supra, 196 Conn. 578 (*Peters, C. J.*, concurring); "[i]n light of the seriousness of the issues raised"; id. (*Peters, C. J.*, concurring); including the issue of "whether this court [was] correct in its view of the credit properly to be afforded pretrial detainees held in other jurisdictions [while contesting extradition]." Id. (*Peters, C. J.*, concurring). We therefore are not persuaded by the petitioner's contention that our holdings in *Johnson* and

*Taylor* were predicated upon an erroneous determination of legislative intent.[19]

Our reaffirmance of the construction of § 18-98 that we adopted in *Johnson* and *Taylor* provides strong support for the habeas court's interpretation of § 18-98d: in the absence of any evidence of contrary legislative intent, we see no reason why the legislature would have denied presentence credit under § 18-98 to a person incarcerated in another state while contesting extradition for an offense committed prior to July 1, 1981, and have granted such credit under § 18-98d to a person incarcerated in another state while contesting extradition for an offense committed on or after July 1, 1981. To conclude otherwise would be to ignore the obvious similarity of purpose of §§ 18-98 and 18-98d. Although it is true that those two provisions are not identical, we will not read the provisions to accomplish different results unless there is something in the pertinent statutory language or history to indicate that the legislature intended such a result. See, e.g., *Derwin* v. *State Employees Retirement Commission*, 234 Conn. 411, 420, 661 A.2d 1025 (1995) (because legislature is presumed to have created harmonious and consistent

---

[19] Established principles of stare decisis also militate against the petitioner's claim. As we frequently have stated, "[t]he doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency. . . . It is the most important application of a theory of decisionmaking consistency in our legal culture and it is an obvious manifestation of the notion that decisionmaking consistency itself has normative value." (Citations omitted; internal quotation marks omitted.) *George* v. *Ericson*, 250 Conn. 312, 318, 736 A.2d 889 (1999). Furthermore, "[i]n assessing the force of stare decisis, our case law has emphasized that we should be especially cautious about overturning a case that concerns statutory construction." (Internal quotation marks omitted.) *Ferrigno* v. *Cromwell Development Associates*, 244 Conn. 189, 202, 708 A.2d 1371 (1998).

body of law, we read statutes together when they relate to same subject matter).

Finally, the petitioner claims that construing § 18-98d to deny him credit for the time that he was incarcerated in Massachusetts while contesting extradition to this state renders § 18-98d unconstitutional as applied under the equal protection and due process clauses of the federal constitution.[20] The petitioner recognizes that he can prevail on his claim only if we adopt a position contrary to the view expressed by this court in *Johnson* and *Taylor*. Indeed, the petitioner urges us to adopt the constitutional analysis undertaken by Justice Shea in his dissenting opinion in *Johnson*.[21]

"We conduct our review of this claim mindful that legislative enactments carry with them a strong presumption of constitutionality . . . ." (Internal quotation marks omitted.) *State* v. *McMahon*, 257 Conn. 544, 551, 778 A.2d 847 (2001). Consequently, "a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt." (Internal quotation marks omitted.) Id. We conclude that the petitioner has failed to meet his burden.

---

[20] See also footnote 6 of this opinion.

[21] In support of his claim, the petitioner notes that four of the seven panel members who comprised the two different, five member panels of this court in *Johnson* and *Taylor* expressed the view that construing § 18-98 to deny presentence credit to the petitioners in those cases rendered § 18-98 unconstitutional. See *Taylor* v. *Robinson*, supra, 196 Conn. 577 (*Peters, C. J.*, with whom, *Santaniello, J.*, joined, concurring) (agreeing with Justice Shea's dissenting opinion in *Johnson*); *Johnson* v. *Manson*, supra, 196 Conn. 328 (*Shea, J.*, with whom, *Satter, J.*, joined, dissenting). Although neither of the petitioners prevailed in *Johnson* and *Taylor*, it is true that a collective majority of the panel members assigned to those two cases, namely, Chief Justice Peters, Justices Shea and Santaniello, and Judge Satter, were persuaded by the merits of the claims raised by the two petitioners in those cases. We agree with the petitioner that the views expressed by the various panel members in *Johnson* and *Taylor* militate in favor of a careful review of the constitutional issues addressed by this court in those two cases and raised by the petitioner in the present case.

We turn first to the petitioner's equal protection claim. "We begin by providing the relevant constitutional framework for adjudicating such claims. When a statute is challenged on equal protection grounds . . . the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined. If, in distinguishing between classes,[22] the statute either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard [under which] the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest. . . . If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge." (Internal quotation marks omitted.) *Ramos* v. *Vernon*, 254 Conn. 799, 829, 761 A.2d 705 (2000).

The petitioner contends that the denial of presentence credit under § 18-98d for the time that he was incarcerated in Massachusetts while contesting extradition to this state unduly burdens his fundamental right to liberty and impermissibly chills his right to contest extradition by means of a petition for a writ of habeas corpus. The petitioner claims, therefore, that the state

[22] Thus, "[t]o implicate the equal protection [clause] . . . it is necessary that the state statute [or statutory scheme] in question, either on its face or in practice, treat persons standing in the same relation to it differently. . . . [Consequently], the analytical predicate [of consideration of an equal protection claim] is a determination of who are the persons similarly situated." (Internal quotation marks omitted.) *City Recycling, Inc.* v. *State*, 257 Conn. 429, 448, 778 A.2d 77 (2001). In the present case, the petitioner describes the similarly situated persons as those pretrial detainees like the petitioner, who are incarcerated in another state on Connecticut charges while contesting extradition to this state, on the one hand, and those pretrial detainees who are incarcerated in this state while awaiting trial, on the other hand. We assume, without deciding, that these two groups are similarly situated for equal protection purposes.

may deny him such credit only in furtherance of a compelling state interest. The petitioner further maintains that the state can demonstrate no such compelling justification.

In *Johnson* v. *Manson*, supra, 196 Conn. 319–21, we rejected an identical claim, concluding that constitutional principles of equal protection are inapplicable when the person seeking to invoke those protections to obtain presentence credit is physically outside the jurisdiction of this state for the period in question. We do not find this logic persuasive, however, because, as Justice Shea observed in his dissenting opinion, Johnson had been held in Florida solely at this state's request. Id., 333 (*Shea, J.,* dissenting). In such circumstances, we agree with Justice Shea that any "denial of equal protection . . . occurred while [Johnson] was in this state at the time of sentencing when the time he served in Florida was not credited." Id., 332 (*Shea, J.,* dissenting); see footnote 13 of this opinion. We also held in *Johnson,* however, that, even if Johnson's claim implicated the equal protection clause, he nevertheless could not prevail because the rational basis standard, as opposed to the compelling state interest standard, would be applicable. *Johnson* v. *Manson,* supra, 321 n.12. We explained that the "credit sought by [Johnson] under § 18-98, statutorily created, is a matter of legislative grace"; id.; and, therefore, does not give rise to a fundamental right. Id. We concluded that, in such circumstances, the state need only demonstrate a rational basis for treating Johnson differently from those who are entitled to credit under § 18-98. See id., 321–22 n.12. We further determined that "[t]he classification [created by § 18-98] between those persons who are confined within the control of the Connecticut correctional system and those who are not" is a rational one that bears "a fair and substantial relation to the object of § 18-98 . . . ." Id. The petitioner challenges

this alternative conclusion, claiming, first, that the effective extension of his sentence occasioned by the denial of presentence credit under § 18-98d implicates a liberty interest that the constitution recognizes as fundamental. We disagree.

It is well established that presentence credit is a creature of statute and that, as a general rule, such credit is not constitutionally required.[23] See, e.g., *Travis* v. *Lockhart*, 925 F.2d 1095, 1097 (8th Cir. 1991); *Boutwell* v. *Nagle*, 861 F.2d 1530, 1532 (11th Cir. 1988), cert.

---

[23] Courts have held that the equal protection clause entitles a defendant to presentence confinement credit if the defendant is held for a bailable offense, is unable to make bail as a result of his indigency and receives the statutory maximum sentence for that offense. See, e.g., *Palmer* v. *Dugger*, 833 F.2d 253, 255–56 (11th Cir. 1987); *Hook* v. *Arizona*, 496 F.2d 1172, 1173–74 (9th Cir. 1974). The rule of these cases is predicated upon the United States Supreme Court's holding in *Williams* v. *Illinois*, 399 U.S. 235, 240–41, 244, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970), that the equal protection clause prohibits a state from incarcerating a person for longer than the statutory maximum prison term on the basis of his or her inability to pay a fine because of indigency. See *Palmer* v. *Dugger*, supra, 256; *Hook* v. *Arizona*, supra, 1173–74. Although Justice Shea, in his dissenting opinion in *Johnson*, relied principally on this line of cases in urging a construction of § 18-98 that authorizes presentence credit for the period of time during which an indigent pretrial detainee is incarcerated in another state while contesting extradition to this state; see *Johnson* v. *Manson*, supra, 196 Conn. 338–39 (*Shea, J.*, dissenting); the holdings of those cases were not directly applicable to Johnson's claim because Johnson was denied bail in the asylum state. Id., 319 n.10. The petitioner in the present case likewise has failed to establish that bond was set and that he failed to post it as a result of indigency. Consequently, the petitioner, like Johnson, cannot avail himself of the rule set forth in the foregoing cases that is predicated on the holding in *Williams*.

Several other courts have held that an indigent defendant is constitutionally entitled to presentence credit if he was unable to post bond even though he did not receive the maximum sentence. See, e.g., *Faye* v. *Gray*, 541 F.2d 665, 668–69 (7th Cir. 1976); *King* v. *Wyrick*, 516 F.2d 321, 323, 325 (8th Cir. 1975). We note, however, that Justice Shea did not articulate this view in his dissent in *Johnson*, and the petitioner himself has raised no such claim in the present case. Indeed, this line of cases provides no support for the petitioner's equal protection claim because he has failed to establish that he was unable to post bail as a result of indigency. See footnote 14 of this opinion.

denied, 490 U.S. 1099, 109 S. Ct. 2452, 104 L. Ed. 2d 1006 (1989); *Lewis* v. *Cardwell*, 609 F.2d 926, 928 (9th Cir. 1979); *Jackson* v. *Alabama*, 530 F.2d 1231, 1237 (5th Cir. 1976). Because such credit is not constitutionally mandated, it is not one of those few rights deemed so fundamental that the state cannot impinge upon it in the absence of a compelling reason. "It is not the province of [the courts] to create substantive constitutional rights in the name of guaranteeing equal protection of the laws." *San Antonio Independent School District* v. *Rodriguez*, 411 U.S. 1, 33, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973). Rather, "[t]he key to discovering whether a right is fundamental is in assessing whether the right is explicitly or implicitly guaranteed by the [c]onstitution. . . . Such rights include first amendment rights, which are explicitly provided for by the [c]onstitution, see, e.g., *Mt. Healthy City Board of Education* v. *Doyle*, 429 U.S. 274, 284–85, [97 S. Ct. 568], 50 L. Ed. 2d 471 (1972); *Perry* v. *Sindermann*, 408 U.S. 593, 598, [92 S. Ct. 2694], 33 L. Ed. 2d 570 (1983); the right to travel interstate, which has been found to be implicit in the [c]onstitution, see, e.g., *Martinez* v. *Bynum*, 461 U.S. 321, [328–29, 103 S. Ct. 1838], 75 L. Ed. 2d 879 (1983); *Shapiro* [v. *Thomas*, 394 U.S. 618, 629–31, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969)]; and the right to vote, which is the guardian of all other rights. *Harper* v. *Virginia Board of Elections*, 383 U.S. 663, 667, [86 S. Ct. 1079], 16 L. Ed. 2d 169 (1966). . . . Further examples of fundamental rights implicitly guaranteed by the constitution are those of marriage; *Zablocki* v. *Redhail*, 434 U.S. 374, [383] 98 S. Ct. 673, 54 L. Ed. 2d 618 (1978); privacy; *Roe* v. *Wade*, [410 U.S. 113, 152, 93 S. Ct. 705, 35 L. Ed. 2d 147] (1973); and freedom of association. [*National Assn. for the Advancement of Colored People*] v. *Alabama*, 357 U.S. 449, [460] 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958)." (Citations omitted; internal quotation marks omitted.) *Zapata* v. *Burns*, 207 Conn. 496, 506,

542 A.2d 700 (1988); accord *State Management Assn. of Connecticut, Inc.* v. *O'Neill*, 204 Conn. 746, 751, 529 A.2d 1276 (1987). Credit for presentence incarceration does not fall within this exalted group of rights that are recognized as fundamental.

It is true, as the petitioner contends, that denying him credit for the four months that he was incarcerated in Massachusetts effectively lengthens his sentence by that amount of time.[24] Nevertheless, the fact that a legislative classification may serve to increase one's period of imprisonment is insufficient, standing alone, to implicate an interest so fundamental as to require the state to establish a compelling justification for the statutory scheme. Thus, even though the denial of statutory good time credit results in an effectively longer sentence, it is settled that the equal protection clause does not prohibit the government from awarding good time credit only to sentenced prisoners, and not to prisoners incarcerated prior to trial, as long as a rational basis exists to do so. See *McGinnis* v. *Royster*, 410 U.S. 263, 268, 273–74, 93 S. Ct. 1055, 35 L. Ed. 2d 282 (1973) (statute authorizing good time credit for time served following imposition of sentence but not for presen-

---

[24] Of course, in circumstances in which a detainee has no constitutional or statutory entitlement to credit for a period of pretrial incarceration, as in the present case, the sentencing judge nevertheless has the inherent discretionary authority, in fashioning an appropriate sentence, to credit the detainee with any such period of pretrial incarceration. There is nothing in the record of the present case, however, to indicate whether the trial court considered that four month period at sentencing. We assume, for purposes of this appeal, that the trial court did not consider that four month period. Cf. *Johnson* v. *Prast*, 548 F.2d 699, 703 (7th Cir. 1977) (unless state established that sentencing judge had given credit to defendant for period that defendant was incarcerated prior to trial, calculation of defendant's sentence must include credit for such incarceration). But cf. *Parker* v. *Estelle*, 498 F.2d 625, 627 (5th Cir. 1974), cert. denied, 421 U.S. 963, 95 S. Ct. 1951, 44 L. Ed. 2d 250 (1975) (in cases "in which the sentence imposed plus time spent in pre-sentence custody totals less than the maximum for the offense, there is a conclusive presumption that the sentencing judge gave [the defendant] credit for the pre-sentence custody").

tence incarceration passes muster under equal protection clause if reason for distinction is rationally based); cf. *Frazier* v. *Manson*, 703 F.2d 30, 34 (2d Cir.), cert. denied, 464 U.S. 934, 104 S. Ct. 339, 78 L. Ed. 2d 308 (1983) (statutory scheme under which some sentenced prisoners are awarded more good time than others does not violate equal protection clause if rational basis exists for classification). It is not surprising, therefore, that the petitioner has identified no case, and we are aware of none, in which a pretrial detainee has prevailed on a claim that the denial of presentence credit, without more, implicates a fundamental right. Indeed, the cases that we have found have reached a contrary determination. See, e.g., *Beauchamp* v. *Murphy*, 37 F.3d 700, 707, 708 (1st Cir. 1994), cert. denied, 514 U.S. 1019, 115 S. Ct. 1365, 131 L. Ed. 2d 221 (1995); *Boutwell* v. *Nagle*, supra, 861 F.2d 1531–32. We therefore reject the petitioner's claim that the commissioner's denial of presentence credit for the period of his confinement in Massachusetts while contesting extradition to this state implicates a fundamental right.[25]

The petitioner also claims that the denial of presentence credit for the four months that he was incarcerated in a Massachusetts facility implicates yet another fundamental right, namely, his right to challenge his extradition to this state by means of a petition for a writ of habeas corpus. In support of this claim, the petitioner relies on Justice Shea's assertion in his dis-

---

[25] In his dissent in *Johnson*, Justice Shea relied on *Laden* v. *Warden*, 169 Conn. 540, 363 A.2d 1063 (1975), to support his contention that denying Johnson credit under § 18-98 violated the equal protection clause. See *Johnson* v. *Manson*, supra, 196 Conn. 339 (*Shea, J.*, dissenting). In *Laden*, this court held that the equal protection clause prohibited the state from denying statutory presentence confinement credit to an *indigent* defendant who had failed to conform to the rules of the institution. See *Laden* v. *Warden*, supra, 540, 549. Because our conclusion in *Laden* apparently was predicated on the petitioner's indigency; see id., 543–44; our holding therein does not bear on our resolution of the issues presented by this appeal.

senting opinion in *Johnson* that, "[s]ince the essential issue in a habeas corpus proceeding, such as an extradition hearing, is the legality of the petitioner's confinement, it follows that nothing less than the fundamental constitutional right of liberty is at stake in such an inquiry. . . . It is beyond cavil that the different treatment . . . accorded those who seek to contest extradition must inevitably operate to discourage the free exercise of that constitutional right . . . ." (Citations omitted.) *Johnson* v. *Manson*, supra, 196 Conn. 335 (*Shea, J.*, dissenting). We disagree.

Although the denial of presentence credit may be characterized as implicating a "liberty interest" in the broadest sense of that term, credit for presentence incarceration is not a fundamental right. Under Justice Shea's view, however, the denial of such credit effectively would be elevated to a fundamental right simply because the act of challenging the state's attempt to extradite happens to take the form of a petition for a writ of habeas corpus. We are not persuaded that presentence credit may be bootstrapped in order to elevate its status to that of a fundamental right.

As Justice Shea noted in *Johnson*, the writ of habeas corpus is constitutionally based. Id., 334–35 (*Shea, J.*, dissenting). Ordinarily, however, a habeas petition is filed following conviction and exhaustion of appellate remedies. Thus, in the vast majority of cases, a habeas petition is the sole remaining means by which a defendant may challenge the legality of his confinement. Under those circumstances, it is true, as Justice Shea noted, that "[i]t must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired." (Internal quotation marks omitted.) Id., 334 (*Shea, J.*, dissenting), quoting *Bowen* v. *Johnston*, 306 U.S. 19, 26, 59 S. Ct. 442, 83 L. Ed. 2d 455 (1939). In the extradition context, by contrast, a detainee's

fundamental purpose in seeking a writ of habeas corpus is not to challenge his confinement in the asylum state but, rather, to contest the extradition efforts of the requesting state.[26] Indeed, because a habeas petition is the appropriate vehicle for contesting extradition; see General Statutes § 54-166;[27] the petitioner would have been required to file a habeas petition to challenge this state's efforts to extradite him even if he had been released on bail in Massachusetts. See *Engel* v. *Bourbeau*, 201 Conn. 162, 163 n.3, 513 A.2d 688 (1986). Moreover, an extradition hearing, which takes place before the start of formal adversarial judicial proceedings; see *State* v. *Falcon*, 196 Conn. 557, 561–62, 494 A.2d 1190 (1985); "is only a summary proceeding, limited to determining whether the necessary documents are in order, whether the petitioner has been charged with a crime, is the person named in the extradition request and is a fugitive from justice." Id., 564; see also *Michigan* v. *Doran*, supra, 439 U.S. 289. Finally, in the event that a detainee fails to defeat extradition, he retains the full panoply of rights and protections guaranteed under the constitution and the laws of the requesting state to challenge his arrest and confinement. Under these circumstances, it reasonably cannot be main-

[26] Of course, if a pretrial detainee who is incarcerated in the asylum state is successful in defeating extradition, he will be released from custody in that state. His release under those circumstances, however, is merely a necessary consequence of his successful extradition challenge, which, as we have explained, is the essential purpose of a petition for a writ of habeas corpus in the extradition context.

[27] General Statutes § 54-166 provides in relevant part: "No person arrested upon [an arrest] warrant shall be delivered over to the agent whom the executive authority demanding him has appointed to receive him unless he is first taken forthwith before a judge of any court having criminal jurisdiction in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel states that he or they desire to test the legality of his arrest, the judge of such court shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. . . ."

tained that the alleged impairment of the writ of habeas corpus owing to the denial of presentence credit constitutes an impermissible infringement on any fundamental right or liberty interest.

We conclude, therefore, that the equal protection clause does not prohibit the state from denying presentence credit to a pretrial detainee for the time that he or she is incarcerated in another state while contesting extradition to this state provided a rational basis exists for the denial of such credit.[28] We now turn to the issue of whether a rational basis exists for the denial of such credit.

"[E]qual protection is not a license for courts to judge the wisdom, fairness or logic of legislative choices." (Internal quotation marks omitted.) *Barton* v. *Ducci Electrical Contractors, Inc.*, 248 Conn. 793, 817, 730 A.2d 1149 (1999). Thus, in areas of social and economic policy that neither proceed along suspect lines nor infringe fundamental constitutional rights, "the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, see *United States Railroad Retirement [Board]* v. *Fritz*, 449 U.S. 166, 174, 179 [101 S. Ct. 453, 66 L. Ed. 2d 368] (1980), the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, see *Minnesota* v. *Clover Leaf Creamery Co.*, 449 U.S. 456, 464 [101 S. Ct. 715, 66 L. Ed. 2d 659] (1981), and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational, see *Cleburne* v. *Cleburne Living Center, Inc.*, 473 U.S. [432, 446, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)]." *Nordlinger* v. *Hahn*, 505 U.S. 1, 11, 112 S. Ct. 2326, 120 L. Ed. 2d

---

[28] As we have indicated, this general rule is subject to one or more exceptions. See footnote 23 of this opinion. No such exception, however, is applicable under the facts and circumstances of the present case.

1 (1992). In *Johnson* v. *Manson*, supra, 196 Conn. 321–22 n.12, we determined that it was reasonable for the legislature, under § 18-98, to distinguish between pretrial detainees on the basis of whether their confinement was under the control of Connecticut authorities. We agree with our conclusion in *Johnson*, which is equally applicable to § 18-98d.

That conclusion finds strong support in *Reno* v. *Koray*, 515 U.S. 50, 115 S. Ct. 2021, 132 L. Ed. 2d 46 (1995), a case that was decided a decade after *Johnson*. In *Koray*, the court was required to determine whether 18 U.S.C. § 3585 (b), which "provides that a defendant [convicted of a federal offense] generally must 'be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences' "; *Reno* v. *Koray*, supra, 52, quoting 18 U.S.C. § 3585 (b) (1994); applied to a defendant who had been admitted to bail and confined to a community treatment center pending trial. *Reno* v. *Koray*, supra, 52. In concluding that such confinement did not constitute " 'official detention' " within the meaning of 18 U.S.C. § 3585 (b); id.; the court explained: "It is . . . true that under the [statutory interpretation adopted by the court] a defendant 'released' to a community treatment center could be subject to restraints which do not materially differ from those imposed on a 'detained' defendant committed to the custody of the Attorney General, and thence assigned to a treatment center. But this fact does not undercut the remaining distinction that exists between *all* defendants committed to the custody of the Attorney General on the one hand, and *all* defendants released on bail on the other. Unlike defendants 'released' on bail, defendants who are 'detained' or 'sentenced' *always remain subject to the control of the Bureau [of Prisons* (Bureau)]. . . . This is an important distinction, as the identity of the custodian has both legal and

practical significance. A defendant who is 'released' is not in [the Bureau's] custody, and he cannot be summarily reassigned to a different place of confinement unless a judicial officer revokes his release . . . or modifies the conditions of his release . . . . A defendant who is 'detained,' however, is completely subject to [the Bureau's] control. And '[t]hat single factor encompasses a wide variety of restrictions.' . . . 'Detained' defendants are subject to [the Bureau's] disciplinary procedures; they are subject to summary reassignment to any other penal or correctional facility within the system . . . and, being in the legal custody of [the Bureau], the Bureau has full discretion to control many conditions of their confinement." (Citations omitted; emphasis in original.) Id., 62–63.

These observations by the court in *Koray* are equally applicable to the present case. When a detainee is not under the control of Connecticut authorities, he is neither subject to this state's disciplinary procedures nor subject to reassignment to other facilities under this state's control. See *Johnson* v. *Manson*, supra, 196 Conn. 321–23 n.12. Moreover, he is not subject to the conditions of confinement established by the commissioner. To credit the petitioner's sentence for the time that he spent in Massachusetts while challenging extradition would "[defeat] the very interest that underlies the no-credit rule: that [this state] fixes the place of imprisonment, not the prisoner." *Beauchamp* v. *Murphy*, supra, 37 F.3d 705; see also *Boutwell* v. *Nagle*, supra, 861 F.2d 1532. Accordingly, we conclude that the classification created by § 18-98d passes muster under the equal protection clause because that classification is reasonably related to a legitimate state interest.

Finally, the petitioner claims that the denial of credit under § 18-98d for the time that he was incarcerated in Massachusetts violates his right to substantive due process. Specifically, the petitioner contends that the

denial of credit that he would have received if he immediately had waived extradition and submitted to the custody of the commissioner constitutes an impermissible burden on his right to contest extradition by means of a petition for a writ of habeas corpus.

The analytical framework for reviewing substantive due process claims is well established. If the petitioner can demonstrate that the denial of credit under § 18-98d implicates a fundamental right, we must apply strict scrutiny to that statutory provision and require the state to show that the denial of presentence credit for the period that he was incarcerated in Massachusetts furthers a compelling state interest. See, e.g., *State* v. *Jason B.*, 248 Conn. 543, 561, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999). If, however, the petitioner's claim does not implicate a fundamental right, we review § 18-98d under a rational basis test. E.g., *Ramos* v. *Vernon*, supra, 254 Conn. 840. In such circumstances, the state must show only that the law is not arbitrary or capricious, that is, that it bears a reasonable relation to some legitimate state purpose. See, e.g., *State* v. *Matos*, 240 Conn. 743, 749–50, 694 A.2d 775 (1997).

Although " 'due process' has never been, and perhaps can never be, precisely defined"; *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 24, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981); "the core of the concept [is] protection against arbitrary [state] action . . . ." *Sacramento* v. *Lewis*, 523 U.S. 833, 845, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). The guarantee of substantive due process "also provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington* v. *Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997). In particular, the due process clause "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition . . .

and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed . . . . Our Nation's history, legal traditions, and practices thus provide the crucial guideposts for responsible decisionmaking . . . that direct and restrain our exposition of the Due Process Clause." (Citations omitted; internal quotation marks omitted.) Id., 720–21. "[I]n addition to the specific freedoms protected by the Bill of Rights, the liberty specially protected by the Due Process Clause includes the rights to marry, *Loving* v. *Virginia,* 388 U.S. 1 [12, 87 S. Ct. 1817, 18 L. Ed. 2d 1010] (1967); to have children, *Skinner* v. *Oklahoma ex rel. Williamson,* 316 U.S. 535 [541, 62 S. Ct. 1110, 86 L. Ed. 1655] (1942); to direct the education and upbringing of one's children, *Meyer* v. *Nebraska,* 262 U.S. 390 [400, 43 S. Ct. 625, 67 L. Ed. 1042] (1923); *Pierce* v. *Society of Sisters,* 268 U.S. 510 [534–35, 45 S. Ct. 571, 69 L. Ed. 1070] (1925); to marital privacy, *Griswold* v. *Connecticut,* 381 U.S. 479 [485–86, 85 S. Ct. 1678, 14 L. Ed. 2d 510] (1965); to use contraception, [id].; *Eisenstadt* v. *Baird,* 405 U.S. 438 [453, 92 S. Ct. 1029, 31 L. Ed. 2d 349] (1972); to bodily integrity, *Rochin* v. *California,* 342 U.S. 165 [172–73, 72 S. Ct. 205, 96 L. Ed. 183] (1952), and to abortion, [*Planned Parenthood of Southeastern Pennsylvania* v. *Casey,* 505 U.S. 833, 846, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992)]."[29] *Washington* v. *Glucksberg,* supra, 720; see also *Cruzan ex rel. Cruzan* v. *Director, Missouri Dept. of Health,* 497 U.S. 261, 279, 110 S. Ct. 2841, 111 L. Ed. 2d 224 (1990) (assuming that due process clause protects right to refuse unwanted lifesaving medical treatment).

---

[29] We note that the United States Supreme Court recently has reiterated its "reluctan[ce] to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended." (Internal quotation marks omitted.) *Washington* v. *Glucksberg,* supra, 521 U.S. 720, quoting *Collins* v. *Harker Heights,* 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992).

The petitioner's claim seeking presentence credit for the four months that he was incarcerated in Massachusetts does not implicate any fundamental right or liberty interest protected by the due process clause. The petitioner's claim is predicated solely on the contention that the denial of presentence credit impermissibly penalizes him for exercising his right to contest, by means of a petition for a writ of habeas corpus, this state's efforts to extradite him.[30] We reject the petitioner's claim for the same reason that we rejected his similar contention under the equal protection clause: the petitioner's limited right to contest extradition is not a fundamental right or liberty interest protected by the due process clause, and it cannot be transformed into one merely because a habeas petition is the statutorily designated means pursuant to which extradition is contested.

Consequently, the state must establish only that a rational basis exists for denying the petitioner credit under § 18-98d for the four months that he was incarcerated in Massachusetts while contesting extradition to this state. We already have concluded that the denial of such credit is rationally related to a legitimate state interest. See *Ramos* v. *Vernon*, supra, 254 Conn. 841 ("[e]qual protection rational basis review is for all material purposes . . . indistinguishable from . . . [rational basis review under] due process [clause]"). Accordingly, the petitioner's substantive due process claim must fail.

---

[30] The petitioner does not contend that presentence confinement itself gives rise to a fundamental right or liberty interest such that the state may not deny credit for such confinement in the absence of a compelling justification. See *Regents of the University of Michigan* v. *Ewing*, 474 U.S. 214, 229, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985) (Powell, J., concurring) (substantive due process rights, unlike procedural due process rights, are created only by constitution); accord *Nicholas* v. *Pennsylvania State University*, 227 F.3d 133, 140 (3d Cir. 2000); *Charles* v. *Baesler*, 910 F.2d 1349, 1354 (6th Cir. 1990).

## II

We next address the petitioner's contention that the Appellate Court improperly failed to review the petitioner's claim seeking credit under § 18-98d for the period from January 2, 1986, to January 8, 1986, that he was in transit to Connecticut and confined at the Bristol police department. The Appellate Court declined to consider the petitioner's claim because "the petitioner [had] failed to make a separate argument with regard to this claim"; *Hammond* v. *Commissioner of Correction*, supra, 54 Conn. App. 16 n.5; thereby abandoning it. Id.

To the extent that this claim was predicated on the same equal protection and due process arguments that the petitioner had raised in support of his claim of entitlement to credit for the time that he was incarcerated in Massachusetts, we agree with the petitioner that his claim was sufficiently briefed. We reject the petitioner's claim on its merits, however, because, as we indicated in part I of this opinion, § 18-98d, like § 18-98, applies only to pretrial detainees whose confinement is subject to the control of the commissioner, and, further, construing § 18-98d in that manner does not violate constitutional principles of equal protection or due process. Because the petitioner was not within the custody or control of the commissioner either when he was in transit to this state from Massachusetts or when he was confined at the Bristol police department, he is not entitled to presentence credit under § 18-98d for those periods of time.[31]

The judgment of the Appellate Court is affirmed.

---

[31] We noted in *Taylor* that fairness may require an award of presentence credit if extradition has been delayed unnecessarily due to "the failure of Connecticut authorities to return the extraditee when he is available to be returned to Connecticut." *Taylor* v. *Robinson*, supra, 196 Conn. 577. The petitioner, however, raises no such claim on appeal.

In this opinion NORCOTT, KATZ and VERTEFEU-ILLE, Js., concurred.

MCDONALD, C. J., concurring. I concur.[1]

---

[1] This is one of those cases where "because of various legitimate factors, decisions of this court have not been rendered until many months after their oral argument, sometimes not until the following court year." *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 912, 914B, 914G, 746 A.2d 1257 (1999). Because, as appears at the beginning of this opinion, I participated in this case after reaching mandatory retirement age, it should be noted I concurred in the opinion within fourteen days. See id.