WILLIAM H. X. TAYLOR *v.* CARL ROBINSON, WARDEN
(11947)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued April 2—decision released July 2, 1985

*L. D. McCallum,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (respondent).

*G. Douglas Nash,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellee (petitioner).

ARTHUR H. HEALEY, J. The petitioner, William H. X. Taylor, instituted this habeas corpus proceeding against the respondent commissioner of correction, seeking credit under General Statutes § 18-98[1] for ninety-seven days which he spent confined in New York awaiting extradition to Connecticut. The trial court granted the writ under § 18-98 and ordered the commissioner to credit the petitioner's Connecticut sentence with the ninety-seven days. The commissioner has appealed.

---

[1] General Statutes § 18-98 entitled, "Confinement where bail unobtainable: Presentence confinement credit prior to July 1, 1981," provides: "Any person who has been denied bail or who has been unable to obtain bail and who is subsequently imprisoned for an offense committed prior to July 1, 1981, is entitled to commutation of his sentence by the number of days which he spent in a community correctional center from the time he was denied or was unable to obtain bail to the time he was so imprisoned. The commissioner of correction shall, if such person has conformed to the rules of the institution, credit such person with the number of days to which the supervising officer of the correctional center where such person was confined while awaiting trial certifies such person was confined between the denial of bail to him or his inability to obtain bail and his imprisonment."

Certain background circumstances should be set out. On August 29, 1979, Taylor was arrested in New York as a fugitive from justice in Connecticut on the basis of an arrest warrant charging him with robbery in the first degree and larceny in the second degree in connection with a New Haven bank robbery. He was incarcerated in New York without bail from August 29, 1979, to December 3, 1979, during which time there were extradition proceedings. On November 5, 1979, the governor of New York issued an extradition warrant. On December 3, 1979, Taylor waived extradition and was returned that day to Connecticut, where he was arrested, arraigned and remanded in lieu of bond. He was tried and convicted on the bank robbery charge and on October 3, 1980, was given an effective sentence of not less than ten years nor more than twenty years.[2] From the time of his return to Connecticut through the time that sentence was imposed, the petitioner was incarcerated because of his failure to obtain bail. At his sentencing on October 3, 1980, the commissioner credited him with the number of days he spent in confinement in Connecticut after his return from New York on December 3, 1979. The commissioner, however, refused to give credit for the ninety-seven days that Taylor was confined in New York from August 29, 1979, to December 3, 1979.

On appeal from the trial court's reversal of his determination, the commissioner claims that the trial court erred: (1) in concluding that General Statutes § 18-98 authorizes a credit on the petitioner's Connecticut sentence for the time for which he was incarcerated in New York awaiting extradition; (2) in concluding that the

---

[2] On October 3, 1980, Taylor was also sentenced on another information for a term of imprisonment of not less than two and one-half years and not more than five years for the crimes of burglary in the third degree and larceny in the second degree. These sentences were ordered to be served concurrently with the sentence imposed the same day for robbery in the first degree.

Connecticut charges were the sole reason for the petitioner's incarceration in New York; and (3) in allowing the petitioner himself to testify about the "official circumstances" of his arrest and incarceration in New York.[3]

We agree with the commissioner's claim that it was error for the trial court to conclude that General Statutes § 18-98 mandates that the commissioner grant the petitioner the credit on his Connecticut criminal sentence for that time he was confined in New York awaiting extradition. Our recent decision in *Johnson* v. *Manson,* 196 Conn. 309, 493 A.2d 846 (1985), requires this result.

Because § 18-98 does not authorize the credit sought by the petitioner, the trial court's implicit conclusion that he was held in New York solely pursuant to a Connecticut warrant requires no different conclusion; see *Johnson* v. *Manson,* supra; and, therefore, we need not reach any other claim of error properly raised by the commissioner.[4]

---

[3] In his brief, the commissioner claims that the denial of credit under General Statutes § 18-98 for time spent in confinement awaiting extradition in a foreign jurisdiction does not violate equal protection guarantees under the United States or Connecticut constitutions. In *Johnson* v. *Manson,* 196 Conn. 309, 493 A.2d 846 (1985), where that claim was properly before us, we resolved it against the petitioner in that case. We note that as in *Johnson* v. *Manson,* supra, there is no claim that the petitioner's confinement in New York was due to indigency.

The petitioner, in his brief, asserted that the equal protection issue should not be considered by us, not only because the trial court never reached that question, but also because there are no factual findings as to classifications of persons affected by § 18-98 so as to enable us to decide an equal protection issue. At oral argument his counsel stated that he was withdrawing this assertion in the event we found error, and if that occurred, he suggested that we could remand this case to the trial court "for further articulation" and a decision on the merits of the constitutional claims. We decline to do so because *Johnson* v. *Manson* is dispositive of this case, particularly in the absence of any claim of indigency.

[4] At oral argument, counsel for the commissioner stated that the petitioner Taylor had been given the ninety-seven day "credit" which is at issue, had been released on parole, and is under supervision as a parolee. He

Finally, we address a matter which developed in oral argument and about which counsel admitted there was no evidence or claim made at the trial. This involved instances where the commissioner apparently gave "credit" on a Connecticut criminal sentence for time spent in confinement while awaiting extradition in another state. Counsel for the commissioner acknowledged that the commissioner had given "credit" up to as much as ten or twelve days. He specifically said, however, that *all* of these "credits" had been granted where the persons involved had in fact either been already *ordered* extradited to Connecticut or had already *waived* extradition to return to this state, and, therefore, these persons were then immediately available to be returned here. The "credit" was given in those cases, he explained, because Connecticut authorities were not in the other state at those particular times, and the period for which the "credit" was given was for that period that was necessarily required for travel to that jurisdiction in order to return such persons to Connecticut. In these cases it is apparent that those persons were immediately available to be returned to this state, if Connecticut authorities were on the scene to do so. Although such credit is not statutorily authorized by § 18-98; *Johnson* v. *Manson,* supra; the commissioner has suggested that to credit such time is a fair accommodation under those circumstances. Some jurisdictions have granted credit for time when a prisoner was held in *unnecessary* custody in another jurisdiction; see

informed us that, as a practical matter, in the event that we found error, the ninety-seven days would probably be added to his parole time and he would be held under the original mittimus for that additional period. In the event he concluded his "extended" parole time without incident, he would, we were informed, be discharged from parole.

One on parole may, of course, apply for the grant of a writ of habeas corpus. *Jones* v. *Cunningham,* 371 U.S. 236, 238–42, 83 S. Ct. 373, 9 L. Ed. 2d 285 (1963); *In re Catalano,* 29 Cal. 3d 1, 8, 623 P.2d 228, 171 Cal. Rptr. 667 (1981); see *United States ex rel. DeFillo* v. *Fitzpatrick,* 378 F.2d 85, 87 (2d Cir. 1967).

generally *Williams* v. *State,* 280 N.W.2d 406, 408 (Iowa 1979); and we note, without deciding, that the commissioner's "crediting" of travel time may be arguably analogous. We also reserve for another day, when it is properly before us, our views on any claim regarding an extraditee whose detention in another jurisdiction has been prolonged by unnecessary delay caused by the failure of Connecticut authorities to return the extraditee when he is available to be returned to Connecticut. We reiterate unequivocally, however, that the commissioner cannot provide any such "credit" under the authority of § 18-98.[5]

There is error, the judgment is set aside and the case is remanded with direction to dismiss the writ of habeas corpus.

In this opinion DANNEHY, J., concurred.

PETERS, C. J., with whom SANTANIELLO, J., joins, concurring. I write separately because I am wholly persuaded, on the merits, by Justice Shea's dissenting opinion in *Johnson* v. *Manson,* 196 Conn. 309, 328, 493 A.2d 846 (1985). I do not understand how the majority holding can fail to chill the right of a person accused of a crime to contest his extradition to Connecticut. The commissioner of correction does not believe that this is what the Connecticut legislature intended to do, and neither do I. I agree with Justice Shea that General Statutes § 18-98, as interpreted by the majority in *Johnson,* violates constitutional guarantees of due process and equal protection of the laws.

---

[5] Objectively read, this opinion does not depart from our construction of General Statutes § 18-98 in *Johnson* v. *Manson,* 196 Conn. 309, 493 A.2d 846 (1985). We should point out that just as "[h]ard questions cannot be avoided by a hypothetical reshuffling of the facts"; *Trimble* v. *Gordon,* 430 U.S. 762, 774, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977); neither should hard questions be created, as the dissenting opinion appears to do, by any hypothetical reshuffling of the facts in a given case.

Nevertheless, I concur in the result reached by the majority here because I agree that this case is controlled by *Johnson* v. *Manson*. "Though blind adherence to precedent is of no value, the necessity of certainty and continuity in the law dictates that 'a court should overrule its own precedents for only the most compelling reasons. *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 62, 111 A.2d 4 (1955).' *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 570, 409 A.2d 1020 (1979)." *State* v. *Castonguay,* 194 Conn. 416, 435, 481 A.2d 56 (1984). A change in the constituency of this court is not a sufficiently compelling reason to warrant departure from a recently established construction of a state statute.

Because the majority holding in *Johnson* v. *Manson* rests squarely on construction of the language of § 18-98, it is now up to the legislature to decide whether this court is correct in its view of the credit properly to be afforded pretrial detainees held in other jurisdictions. In light of the seriousness of the issues raised, I further urge the legislature, in the near future, to reexamine in their entirety the principles that should govern credits for pretrial incarceration. As counsel for the commissioner of correction noted in oral argument, effective operation of the criminal justice system depends upon having clear rules about how long a prison sentence a convicted criminal must serve.

For the reasons stated above, I concur in the judgment of the court.

SHEA, J., dissenting. It is clear that the dispositive issues in this appeal are the same as those presented in *Johnson* v. *Manson,* 196 Conn. 309, 328, 493 A.2d 846 (1985). The observations of the majority opinion concerning the custom of the commissioner in crediting prisoners for time served in jails outside this state after extradition is waived or ordered is a further exam-

ple of a departure from the literal reading of General Statutes § 18-98, allowing credit only for time "spent in a community correctional center," that the opinion purports to adopt. The reservation in the opinion "for another day" of the question, whether a prisoner whose detention in another state has been prolonged by failure to return him to this state promptly after extradition has been waived or ordered, indicates a recognition by the majority, despite some equivocation,[1] of the necessity of giving § 18-98 a more expansive reading where considerations of natural justice, constitutional or otherwise, require. I perceive no distinction of substance between those considerations in the context of unreasonable delay in returning a prisoner to this state, which apparently would induce the majority to modify the narrow interpretation of the statute adopted in *Johnson,* and the concerns for "equal protection of the laws" presented in this case.

Accordingly, I adhere to the views expressed in my dissenting opinion in *Johnson* and also dissent from the judgment of the court in this case. See *Johnson* v. *Manson,* supra, 328–41 (*Shea, J.,* dissenting).

---

[1] See footnote 5 of the majority opinion, supra.