******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROGERS, C. J., concurring. Just as my personal beliefs cannot drive my decision-making, I feel bound by the doctrine of stare decisis in this case for one simple reason—my respect for the rule of law. To reverse an important constitutional issue within a period of less than one year solely because of a change in justices on the panel that is charged with deciding the issue, in my opinion, would raise legitimate concerns by the people we serve about the court's integrity and the rule of law in the state of Connecticut.

Having carefully considered the arguments presented by the parties, I am not persuaded by the state's contention that principles of stare decisis should not control the outcome of this case. Although I agree that "stare decisis is a principle of policy and not a mechanical formula of adherence to the latest decision, *Boys Markets, Inc.* v. [*Retail Clerks Union, Local 770*], 398 U.S. 235, 241 [90 S. Ct. 1583, 26 L. Ed. 2d 199] (1970), it is indisputable that stare decisis is a basic self-governing principle within the Judicial Branch, which is entrusted with the sensitive and difficult task of fashioning and preserving a jurisprudential system that is not based upon an arbitrary discretion. The Federalist, No. 78, p. 490 (H. Lodge ed. 1888) (A. Hamilton). See also *Vasquez* v. *Hillery*, 474 U.S. 254, 265 [106 S. Ct. 617, 88 L. Ed. 2d 598] (1986) (stare decisis ensures that the law will not merely change erratically and permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals)." (Internal quotation marks omitted.) *Patterson* v. *McLean Credit Union*, 491 U.S. 164, 172, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989). "[N]o judicial system could do society's work if it eyed each issue afresh in every case that raised it. . . . Indeed, the very concept of the rule of law underlying our own [c]onstitution requires such continuity over time that a respect for precedent is, by definition, indispensable." (Citation omitted.) *Planned Parenthood of Southeastern Pennsylvania* v. *Casey*, 505 U.S. 833, 854, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992); see also *George* v. *Ericson*, 250 Conn. 312, 318, 736 A.3d 889 (1999) ("Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency. . . . It is the most important application of a theory of [decision-making] consistency in our legal culture and it is an obvious manifestation of the notion that [decision-making] consistency itself has normative value." [Citation omitted; internal quotation marks omitted.]).

"While stare decisis is not an inexorable command . . . particularly when we are interpreting the [c]onsti-

tution . . . even in constitutional cases, the doctrine carries such persuasive force that we have always required a departure from precedent to be supported by some special justification." (Citations omitted; internal quotation marks omitted.) *Dickerson* v. *United States*, 530 U.S. 428, 443, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000). "Such justifications include the advent of subsequent changes or development in the law that undermine a decision's rationale . . . the need to bring [a decision] into agreement with experience and with facts newly ascertained . . . and a showing that a particular precedent has become a detriment to coherence and consistency in the law . . . ." (Citations omitted; internal quotation marks omitted.) *Payne* v. *Tennessee*, 501 U.S. 808, 849, 111 S. Ct. 2579, 115 L. Ed. 2d 720 (1991) (Marshall, J., dissenting).

When neither the factual underpinnings of the prior decision nor the law has changed, "the [c]ourt could not pretend to be reexamining the prior law with any justification beyond a present doctrinal disposition to come out differently from [the prior decision]. To overrule prior law for no other reason than that would run counter to the view repeated in our cases, that a decision to overrule should rest on some special reason over and above the belief that a prior case was wrongly decided." *Planned Parenthood of Southeastern Pennsylvania* v. *Casey*, supra, 505 U.S. 864.

I cannot identify any change or development in the law since the decision in *State* v. *Santiago*, 318 Conn. 1, 122 A.3d 1 (2015), was issued or any new experiences or facts that have come to light. Because there also has been no showing that the substance of the opinion has or will become a detriment to coherence and consistency in the law, applying the doctrine of stare decisis is appropriate. Moreover, although the state has now had an opportunity to present new arguments in the present case that it had no reason to present in *Santiago* because it was not on notice that this court would consider them, the three members of the current court who were in the majority in that case have rejected those arguments on the merits and the fourth member of the majority in *Santiago*, Justice Norcott, had for many years before that decision expressed his view that the death penalty is unconstitutional per se. See, e.g., *State* v. *Rizzo*, 303 Conn. 71, 203, 31 A.3d 1094 (2011) (*Norcott, J.*, dissenting) ("the death penalty per se is wrong, violates the state constitution's prohibition against cruel and unusual punishment [and] . . . our statutory scheme for the imposition of the death penalty cannot withstand constitutional scrutiny because it allows for arbitrariness and racial discrimination in the determination of who shall live or die at the hands of the state" [internal quotation marks omitted]), cert. denied, U.S. , 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012). Accordingly, it is clear that, if these issues had been raised and briefed in *Santiago*, the result would have

been no different. In fact, the only change that has occurred is a change in the makeup of this court, which occurred after oral argument in *Santiago* but before the decision was released. I strongly believe that, in and of itself, a change in the membership of this court within a relatively short period of time cannot justify a departure from the basic principle of stare decisis, especially on an issue of such great public importance.[1] See *Payne* v. *Tennessee*, supra, 501 U.S. 850 (Marshall, J., dissenting) (change in court's personnel "has been almost universally understood *not* to be sufficient to warrant overruling a precedent" [emphasis in original]); *Taylor* v. *Robinson*, 196 Conn. 572, 578, 494 A.2d 1195 (1985) (*Peters*, *C. J.*, concurring) ("[a] change in the constituency of this court is not a sufficiently compelling reason to warrant departure from a [recent decision]"), appeal dismissed, 475 U.S. 1002, 106 S. Ct. 1172, 89 L. Ed. 2d 291 (1986); *Tileston* v. *Ullman*, 129 Conn. 84, 86, 26 A.2d 582 (1942) ("a change in the personnel of the court affords no ground for reopening a question which has been authoritatively settled"), appeal dismissed, 318 U.S. 44, 63 S. Ct. 493, 87 L. Ed. 603 (1943). Any other conclusion would send the message that, whenever there is a hotly contested issue in this court that results in a closely divided decision, anyone who disagrees with the decision and has standing to challenge it need only wait until a member of the original majority leaves the court to mount another assault. In my view, that would be a very dangerous message to send. See *Planned Parenthood of Southeastern Pennsylvania* v. *Casey*, supra, 505 U.S. 854 ("no judicial system could do society's work if it eyed each issue afresh in every case that raised it"); *Wheatfall* v. *State*, 882 S.W.2d 829, 843 (Tex. Crim. App. 1994) (If new personnel were the reason to overrule precedent, "this [c]ourt would be forced to reconsider every decision of . . . our [c]ourt upon changes in membership. Such an endeavor would defeat one of the essential purposes of stare decisis."), cert. denied, 513 U.S. 1086, 115 S. Ct. 742, 130 L. Ed. 2d 644 (1995).

Regardless of any reliance on the majority decision in *Santiago*, or lack thereof, stability in the law and respect for the decisions of the court *as an institution*, rather than a collection of individuals, in and of themselves, are of critically important value, especially on an issue of such great public significance as the constitutionality of the death penalty.[2] See *Vasquez* v. *Hillery*, supra, 474 U.S. 265 (stare decisis "ensure[s] that the law will not merely change erratically, but will develop in a principled and intelligible fashion"); *George* v. *Ericson*, supra, 250 Conn. 318 ("[decision-making] consistency itself has normative value" [internal quotation marks omitted]); *People* v. *Hobson*, 39 N.Y.2d 479, 491, 348 N.E.2d 894, 384 N.Y.S.2d 419 (1976) (It would be "scandalous for a court to shift within less than two years because of the replacement of one of the majority

in the old court by one who now intellectually would have preferred to have voted with the old minority and the new one. The ultimate principle is that *a court is an institution and not merely a collection of individuals* . . . . This is what is meant, in part, as the rule of law and not of men." [Emphasis added.]). Indeed, I believe that overruling the flawed majority decision in *Santiago* under these circumstances would inflict far greater damage on the public perception of the rule of law and the stability and predictability of this court's decisions than would abiding by the decision. See *Planned Parenthood of Southeastern Pennsylvania* v. *Casey*, supra, 505 U.S. 864 ("A basic change in the law upon a ground no firmer than a change in our membership invites the popular misconception that this institution is little different from the two political branches of the [g]overnment. No misconception could do more lasting injury to this [c]ourt and to the system of law which it is our abiding mission to serve . . . ." [Citation omitted; internal quotation marks omitted.]), quoting *Mitchell* v. *W. T. Grant Co.*, 416 U.S. 600, 636, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974) (Stewart, J., dissenting).[3]

Accordingly, I concur with the majority opinion.

[1] In their dissenting opinions, Justice Zarella and Justice Espinosa cite numerous decisions in which this court has overruled one of its decisions. Anyone who has had an opportunity to read those decisions will discover that there is no inconsistency between the position that I took in the decisions in which I joined and the position that I take in the present case. Of particular significance, I would emphasize that, in many of the cases relied upon by the dissenting justices in which this court has overruled a recent decision, at least one member of the majority on the original decision that was being overruled reconsidered and joined with the majority in the subsequent overruling decision. In contrast, in the present case, it is perfectly clear that all of the members of the majority in *Santiago* continue to believe in the correctness of their decision, and the *only* change is the replacement of Justice Norcott by Justice Robinson.

With respect to Justice Espinosa's account of the panel changes that occurred prior to our decision in *Santiago*, suffice it to say that this court followed its standard procedures in determining which justices would sit on all phases of that case.

[2] I agree with much of Justice Zarella's analysis in his dissent in the present case, which, distilled to its essence, argues that, if a past decision was manifestly incorrect and there has been no reliance on it, principles of stare decisis may not require the court to stand by that decision. In *Santiago*, however, Justice Zarella, Justice Espinosa and I explained at great length why we believed that the majority decision was incorrect; see *State* v. *Santiago*, supra, 318 Conn. 231–341 (*Rogers*, *C. J.*, dissenting); id., 341–88 (*Zarella*, *J.*, dissenting); id., 388–412 (*Espinosa*, *J.*, dissenting); and we were unable to persuade the majority. The three members of that majority who are also in the majority in the present case continue to believe that *Santiago* was *not* manifestly incorrect, and there is every reason to believe that the fourth member, Justice Norcott, would agree with them because of his unwavering belief that the death penalty is per se unconstitutional. See *State* v. *Rizzo*, supra, 303 Conn. 202 n.1, 203 (*Norcott*, *J.*, dissenting). When it is clear that the same majority in a prior recent decision that this court is considering overruling continues to believe that the case was correctly decided, I cannot conclude that a mere change in membership of the court justifies overruling that decision. When that has been the *only* intervening change, stability is the overriding consideration. "For it is an established rule to abide by former precedents, where the same points come again in litigation; as well [as] to keep the scale of justice even and steady, *and not liable to waver with every new judge's opinion* . . . ." (Emphasis added.) 1 W. Blackstone, Commentaries on the Laws of England (1775) p. 69.

[3] I emphasize that I express no view on the question of whether the legislature could constitutionally reinstitute the death penalty by repealing No. 12-5 of the 2012 Public Acts and its prospective abolition of the death penalty and reenacting a death penalty statute that applied to all defendants, regardless of the date of their offense. The majority in *Santiago* also recognized that this is an open question. See *State* v. *Santiago*, supra, 318 Conn. 86 n.88 ("[w]e express no opinion as to the circumstances under which a reviewing court might conclude, on the basis of a revision to our state's capital felony statutes or other change in [the five objective indicia of society's evolving standards of decency], that capital punishment again comports with Connecticut's standards of decency and, therefore, passes constitutional muster"); see id., 52–86 (discussing indicia). In any event, the policy issue of whether to attempt to reinstate a constitutional death penalty is now in the hands of the legislature.